**Jerry H. PEVETO and wife, June Peveto, Plaintiffs-Appellants,**

v.

**SEARS, ROEBUCK & CO., et al., Defendants-Appellees.**

No. 86–2057.

United States Court of Appeals, Fifth Circuit.

Jan. 13, 1987.

Steve Carlton, Tommy Gunn, Wingate, Carlton & Gunn, Orange, Tex., for plaintiffs-appellants.

Rayborne Thompson, Jr., Ben H. Sheppard, Jr., Vinson & Elkins, Houston, Tex., for defendants-appellees.

Before GOLDBERG, RUBIN, and POLITZ, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Parents of a young man electrocuted while using a circular hand-held saw seek relief from a judgment entered upon the verdict of a jury that was apparently confused about its fact-finding role. Because we find that the court's response to jury requests for clarification of the jury instructions was not erroneous, the actual damages awarded in the jury's verdict are not clearly inadequate to compensate the plaintiffs for their injuries, and the only evidence of jury confusion—the jurors' post-verdict testimony about their mental processes—is barred from consideration by the Federal Rules of Evidence, we hold that the trial court did not err in denying the plaintiffs' motion for judgment on what the plaintiffs considered the true verdict and did not abuse its discretion by failing to grant the plaintiffs a new trial.

I.

Shawn Peveto was twenty-one years old when he accidentally cut into the power cord of a Sears Craftsman circular saw he was using and died of electrocution. Alleging various design defects and inadequate warnings, his parents sued both the manufacturer of the saw, The Singer Company, and the retail distributor of the saw, Sears, Roebuck and Company, for $2.5 million under the Texas wrongful death [1] and survival statutes.[2] The case was tried before a six-person jury. At the close of the evidence, the trial court instructed the jury on the law and submitted to them eight special interrogatories including questions regarding the comparative fault of the parties and actual damages.

In the course of its deliberations, the jury sent two questions to the trial court. One asked, "[w]hat bearing does the percentage attributable to the party [Shawn Peveto] have on the amount awarded to the Plaintiffs, if any?" In response, the trial court called the jury back into the courtroom and attempted to explain the general theory of contributory negligence. The court summarized the requirements for finding that contributory negligence existed, the theory behind assigning percentage of fault among negligent parties, and the legal effect of finding that an injured party has directly contributed to his injury through his own negligence. Several times the court informed the jury that a finding that the injured person was partially responsible for his own injuries would reduce by the portion of the victim's fault "the damages awarded in the actual damages," the "actual damages recoverable by the Plaintiffs from the Defendants." No objection was made by either party to the trial court's original charge or to its expla-

---

1. Tex.Rev.Civ.Stat.Ann. art. 4671 (Vernon 1952) (repealed 1985).

2. Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1958) (repealed 1985).

nation offered in response to the jurors' inquiry.

The jurors then returned to their deliberations and eventually returned a verdict in which they declared the defendants 4% responsible for Peveto's death and the decedent himself 96% responsible. It found actual damages to be $100,000. The jury was polled to determine whether the figures presented by the jury foreman were the figures the jurors had agreed upon. Each juror indicated that the figures were correct, and the jury was dismissed. The trial court then examined the jury's verdict and entered judgment according to the findings the jury had made, reducing the actual damages found by the jury by 96% and awarding Mr. and Mrs. Peveto $4,000.

Some time after the jury had been dismissed, the Pevetos' lawyer sought out individual jurors and asked them if they had intended that the Pevetos receive only $4,000 or if they had misunderstood their instructions and reduced the requested $2.5 million award by 96% to arrive at their $100,000 verdict. Four of the jurors stated that they had misunderstood the judge's instructions, had intended that the Pevetos receive $100,000, and were willing to sign affidavits to that effect. Although a fifth juror apparently expressed surprise at the legal effect of the verdict, she maintained that she intended her answers to stand regardless of their effect. The sixth juror declared that she understood the effect of the verdict and had intended to answer the interrogatories to produce that result.

On plaintiffs' motion, a hearing was held to substantiate the Pevetos' contention that the jury had been confused by the court's explanation of contributory negligence. Four of the jurors testified that they had misunderstood the charge and had thought they were awarding the Pevetos $100,000. The other two jurors maintained that they had intended to answer in the manner shown by the verdict.

In the course of the hearing, the trial judge said that the jurors obviously had been confused. He acknowledged on several occasions that his charge had not been particularly artful and once asserted that the confusion was at least partially his fault. Ultimately, however, the trial court denied the Pevetos' motion for judgment upon the "true verdict" of the jury without written explanation and entered judgment in favor of the Pevetos for $4,000 plus court costs.

Shortly thereafter, the Pevetos filed a motion for a new trial in which they asked the trial court, exercising its discretionary power, to order the case retried because the ends of justice so required. The trial court, however, denied that motion as well, again without opinion. The Pevetos now appeal, alleging that the trial court erroneously instructed the jury on the effect of contributory negligence on actual damages, erred in refusing to grant the plaintiffs' motion to enter judgment on the true verdict of the jury, and abused its discretion by overruling the plaintiffs' motion for a new trial.

## II.

Rule 606(b) of the Federal Rules of Evidence states:

> Upon an inquiry into the validity of the verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind ... except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

■ Seeking to avoid the exclusionary impact of this rule, the Pevetos contended that the trial court's explanation of the effect of contributory negligence on an award to the plaintiffs was erroneous and, therefore, represented an outside influence improperly brought to bear upon the ju-

rors. This contention fails for several reasons. Assuming, without deciding, that an erroneous explanation of the law had been given by the trial court, it would not qualify as an outside influence improperly brought to bear upon the jurors. The legislative history accompanying Rule 606(b) reveals that "outside influence" refers to an occurrence outside of normal courtroom proceedings, such as a statement made by the bailiff to the jury, the introduction of a prejudicial newspaper account into the jury room, or a threat to the safety of a member of the juror's family.[3]

Although a conversation with the judge outside the courtroom constitutes an improper outside influence about which jurors are competent to testify,[4] testimony about such a communication is permitted not because the information jurors may gain in this manner is necessarily wrong but because it is untempered by the adversary system and outside the record. If the court gives jurors erroneous instructions on the law in the course of normal judicial proceedings, other means of correcting discernible error are available without inquiring into the jurors' mental processes. Of course, in the jury trial process there is always some danger that jurors will misunderstand the law or consider improper factors in reaching their verdict, but, by implementing Rule 606(b), Congress has made the policy decision that the social costs of such error are outweighed by the need for finality to litigation, to protect jurors from harassment after a verdict is rendered, and to prevent the possible exploitation of disgruntled ex-jurors.[5]

The Pevetos' contention that the explanation was erroneous is problematic. Even if it was, however, the Pevetos did not object until after the verdict had been returned and the jury had been discharged. Rule 51 of the Federal Rules of Civil Procedure provides, "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." To escape this prohibition, the Pevetos contend that the instruction was so wrong as to make it plainly in error and invoke the exception to the objection requirement when plain error threatens to create a clear and manifest perversion of justice. This court, however, has noted that the plain error rule is "not a run-of-the-mill remedy" and is to be applied "only in exceptional circumstances to avoid a miscarriage of justice."[6] Furthermore, if the trial court's instruction is correct as a matter of applicable state law, the party who failed to object at trial cannot avail himself of the plain error rule.[7]

 Upon reviewing the contested explanation, we are not convinced even that it was erroneous, much less that it was plainly so. The difficulty with the explanation offered by the trial judge is not that it is substantially inaccurate but that it is muddled and appears—with the aid of hindsight and the testimony of former jurors—not to have answered clearly the question the jurors intended to ask. The jurors asked what bearing the percentage of fault attributable to the victim has on the amount awarded to the plaintiffs. The trial judge explained that contributory negligence proportionately reduces "the actual damages awarded." That answer essentially states the law in Texas.[8] Difficulty emerges because the jurors' written question did not indicate their misunderstanding of the respective roles of the jury and the court in applying the law to their findings of fact.

**3.** *See* Fed.R.Evid. 606(b) advisory committee's note and judiciary committee's note.

**4.** *United States v. Williams,* 613 F.2d 573, 576 (5th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980).

**5.** Fed.R.Evid. 606(b) judiciary committee's note.

**6.** *Rojas v. Richardson,* 703 F.2d 186, 190 (5th Cir.1983).

**7.** *Petty v. Ideco, Inc.,* 761 F.2d 1146, 1153 (5th Cir.1985).

**8.** *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 429 (Tex.1984).

Nor did the trouble become apparent from the follow-up questions asked by jurors during the court's explanation. Consequently, it was never clear exactly what was being asked. The court, therefore, supplied a broad overview of the effect of contributory negligence.

In fact, in the course of its explanation, the court did directly address what appears to have been the real source of juror confusion when it stated:

> See, you find the facts and then I apply the law to them. Whatever you find, whatever those figures should be, and return those, you return the percentages, and then I apply the law to it, and I enter the judgment. You don't enter the judgment. I will interpret those as to how much, if at all, how much it reduces the actual damages.

■ Reading this passage in isolation, a person familiar with legal terminology and the respective roles of judges and juries can recognize that the explanation correctly, albeit inartfully, states the law. Plain error, however, is not established when it becomes clear, only with the aid of testimony derived from jurors after the verdict has been rendered and affirmed, that some jurors may not have understood the legal distinction between "findings of fact" regarding "actual damages" and a "judgment" which results by applying the law of contributory negligence to those findings. To constitute plain error capable of upsetting a verdict in the absence of timely objection by counsel, an obvious mistake must stand out on the face of the trial record. Inadmissible affidavits suggesting that the jury misunderstood relevant facts or law cannot suffice.[9] "Whether or not the jury misunderstood the charge of the court is not a question to be reexamined after the verdict has been rendered."[10]

### III.

■ The district court had discretion to grant the Pevetos' motion for a new trial if,

in its sound view of the competent evidence, the actual damages awarded by the jury were patently inadequate to remedy the harm suffered by the plaintiffs or if, in any respect, the verdict was against the great weight of the evidence.

Shawn Peveto was 21 years old when the accident occurred, single, and childless. He apparently did not contribute anything to his parents' support. His suffering was not extended, for he died at the scene of the accident. Thus, although the evidence introduced suggested that Shawn endured some measure of pain and suffering before he died and that he was close to—and well-loved by—his family, nothing in the trial record so clearly establishes that an award of $100,000 would have inadequately compensated the Pevetos for actual damages they suffered as a result of Shawn's death and for his brief period of final pain as to warrant a determination that the trial court abused its discretion by denying their motion for a new trial.

For these reasons, the judgment is AFFIRMED.

---

**9.** *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 602 n. 30 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974).

**10.** *Id.* (citing *United States v. Chereton,* 309 F.2d 197 (6th Cir.1962)).