Betty KARL, Appellee,

v.

**BURLINGTON NORTHERN
RAILROAD COMPANY,**
Appellant.

No. 88–1092.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1988.

Decided July 11, 1989.

Rehearing and Rehearing En Banc
Denied Sept. 6, 1989.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and NICHOL,[*] Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Burlington Northern Railroad Company appeals from a judgment entered upon a jury verdict for $273,750 in favor of Betty Karl for injuries sustained in a railroad intersection collision. This case presents two troublesome issues concerning the way in which the district court handled the jury. First, the court orally instructed the jury after it returned inconsistent answers to several special interrogatories, and proceeded to resubmit the case to the jury. Second, the district court amended the damage amount rendered in the jury verdict because juror testimony and affidavits, submitted after the jury had been discharged, indicated that the amount set out in the verdict form did not reflect the jury's true intentions. Burlington Northern alleges the district court erred with respect to this conduct and raises additional questions concerning the sufficiency of the evidence, and the admissibility of certain expert testimony and videotaped evidence. We conclude that the district court erred in amending the amount of damages after the verdict was entered, but affirm its judgment in all other respects. We therefore remand this case to the district court with instructions to reinstate the original verdict.

I.

Betty Karl was severely injured when her automobile collided with a Burlington Northern locomotive. She filed this action against the railroad, alleging that its negligence was the proximate cause of the accident.[1]

Lawrence D. Kudej, Susan A. Peters and Paul D. Lundberg, Sioux City, Iowa, for appellant.

Thomas J. Culhane, Omaha, Neb., for appellee.

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. Karl alleged in her complaint that Burlington Northern was negligent in the following six ways:
    1) by failing to give plaintiff adequate notice of the approach of the train;
    2) by operating the train at an excessive or unreasonable rate of speed under the circumstances or under applicable rules, regulations or statutes;
    3) by failing to properly maintain the warning devices at the grade crossing at issue;
    4) by failing to recognize that the grade crossing at issue was unusually hazardous, requiring traffic control and warning devices beyond the minimum required by statute;
    5) by failing to have warning devices in place at the grade crossing which would have provided a driver in the same circumstances as plaintiff with warning, notice of an approaching train, notice of the location and angle of the tracks and notice of a safe place to stop; and

After the case was tried, it was submitted to the jury for deliberation on a number of special interrogatories. The lawyers that had tried the case informed the court that they were not planning to be in the courtroom while the jury deliberated. The district court informed the parties that it did not require them to be present in a civil case, and stated, "If you want to be called and we can get you in 15 or 20 minutes time, we will wait for you." The parties were asked to leave several telephone numbers where they could be reached. The court specifically referred to the possibility of receiving a note from the jury, indicating that for this reason it would prefer to have the parties available, so that they could "have some input" in answering the jury's questions.

That evening, in the absence of counsel, the jury returned to the courtroom and informed the court that it had reached a verdict. The district court distributed copies of the special verdict forms to each of the six jurors, and addressed them at some length concerning their answers to special interrogatories. In Part 1 of the interrogatories, which inquired as to whether defendant was negligent under any of plaintiff's six theories of liability, the jury answered "yes" as to the sixth theory (failure to upgrade the warning devices), but "no" as to the other five theories.[2] Part 2 asked the jury to determine with regard to each of the six theories of negligence, "if the defendant was negligent, was that negligence a proximate cause of the collision * * * ?" As to the sixth theory of failure to upgrade the warning devices, the jury answered "no." In Part 5, where the jury was asked to determine the percentage of fault attributable to the plaintiff and the defendant which was a proximate cause to plaintiff's injuries, the jury found Karl 75 percent at fault and Burlington Northern 25 percent at fault.[3] Finally, in Part 6A the jury found the amount of damages sustained by the plaintiff, without taking into account any reduction for plaintiff's negligence, to be $273,750.[4] The judge told the jury that based upon their finding that Burlington Northern's negligence did not proximately cause Karl's injuries, they "can't give the plaintiff any money" and accomplish what they thought they had accomplished by awarding monetary damages to Karl.[5]

6) by failing to upgrade the traffic control and warning devices at the grade crossing so as to provide a driver in the same circumstances as plaintiff with warning, notice of an approaching train, notice of the location and angle of the tracks and notice of a safe place to stop.

2. The "theories" referred to in Part 1 of the verdict form correlate to those set forth in footnote 1 of this opinion.

3. Part 5 read:

Using 100% as the total combined fault of the plaintiff and defendant which was a proximate cause of plaintiff's injury or damage, what percentage of such combined fault is attributable to the plaintiff and what percentage of such combined fault is attributable to the defendant?

ANSWER: Plaintiff    75   %

Defendant   25   %

4. Part 6A read:

If you have attributed some fault to the defendant, you must now decide the total amount of damages, if any, sustained by the plaintiff, without taking into consideration any reduction of the plaintiff's claim due to her own negligence, if any.

ANSWER: $   273,750

5. The district court instructed the jury as follows:

If I am reading your verdict form right, on Issue Number One you have decided that the defendant was negligent in Plaintiff's Theory Number Six, wherein the plaintiff alleged the defendant had failed to upgrade the traffic control and warning devices at the grade crosses, so as to provide a driver in the same circumstances as to plaintiff with warning, notice of an approaching train, notice of location and angle of the tracks and notice of a safe place to stop.

Now, that is one of the choices you have and I have no argument with the choice and I'm not trying to change it. But then it says if you've answered yes to any of the questions on Part One, continue to Part Two. So you went over to Part Two. And since you had answered no all the way down, you properly did not put anything in the blanks for One, Two, Three, Four and Five Theories.

Because the district court found the verdicts to be inconsistent, it allowed the jury to reconsider its answers to the interrogatories. Later that evening, the jury returned with one answer changed, now finding that Burlington Northern's negligence was the proximate cause of Karl's injuries. Before dismissing the jury, the court polled each juror, and confirmed that the verdict read was the verdict of the jury and that the change in their answer regarding proximate cause was one made of free choice. The district court postponed entering judgment pending resolution of whether it should use the first or the second verdict form in entering judgment.

The next morning, at a meeting with the district court, Karl's counsel asked the court to recall the jury foreman to be interviewed concerning the amount of damages awarded to Karl. In its answer to the damage interrogatory, which asked the jury to decide the total amount of damages sustained by Karl without considering any reduction of Karl's claim due to her own negligence, the jury found the amount to be $273,750. Karl's attorney suspected that this figure, which was approximately 25 percent of the amount requested by Karl at trial, was the result of the jury applying the 25 percent comparative figure to the total amount requested rather than figuring the gross amount of Karl's actual damages. The district court decided to interview the foreman, and discussed on the record the procedures it would follow and the line of questioning it would pursue in interviewing the foreman. Burlington Northern's counsel objected to the propriety of conducting such an interview, as it involved an improper inquiry into a "juror's mental processes" under Fed.R.Evid. 606(b). Neither party objected to the court conducting the inquiry in camera without the presence of counsel.

That afternoon, the district judge interviewed the jury foreman. In response to questions, the foreman explained that the amount of $273,750 was 25 percent of the amount asked for by Karl and represented the actual amount that the jury intended to award Karl. He testified that the jury agreed that Karl's total damages were $1,095,000, and that the amount set out in the interrogatory answer was "the amount we thought she should get." After this testimony, Karl's counsel filed affidavits from all of the other jurors confirming that their impression was the same, and filed a motion to correct the verdict and to enter judgment in Karl's favor in the amount of $273,750.

Burlington Northern filed motions objecting to the jury's reconsideration of its special interrogatories, and to the court's amendment of the verdict and use of affidavits to inquire into the validity of the verdict. The district court determined that its oral instructions to the jury were required because the answers to special interrogatories were inconsistent. The court rejected arguments made by Burlington Northern that it had subtly encouraged the jury to resolve any inconsistency in favor of Karl, and entered judgment on the basis of the second interrogatory form which found Burlington Northern's negligence to be the proximate cause of Karl's injury.

Turning to the issue of amending the verdict, the court concluded that Rule 606(b) allowed it to consider testimony of

Now, let's take just a minute and review what you did in Part Two. It says if the defendant was negligent—and you have found on the front page that he was in the Plaintiff's Theory Number Six. If the defendant was negligent, was that negligence a proximate cause of the collision as that term is defined in Instruction Thirteen.

\* \* \* \* \* \*

Now, what it boils down to is that you have said yes, [defendant] was negligent under Number Six, but you have said under Part Two that that negligence did not help to cause the collision. You put no in there.

Now, if that's your verdict, that is all right with the Court. But if you say no, that the defendant's negligence did not help to cause the accident, was a proximate cause, then you can't give the plaintiff any money. Because first of all you have to find they're negligent, then you have to find that the negligence that you found like in Number Six did help to cause the accident.

You should look at the Instruction Number Thirteen and if you want to persist in this "no", it's fine with me. But it will not accomplish what you may think you have accomplished by writing in a figure on Part Six.

jurors aimed at clarifying, as opposed to impeaching, the verdict. If the juror's testimony indicated that through inadvertence, oversight, or mistake, the verdict announced was not the verdict on which the jurors had agreed, the court recognized that it could consider such testimony to amend the verdict. In analyzing the circumstances, the court concluded that the jury had erred in transmitting the verdict, rather than in reaching the verdict itself. Accordingly, Karl's motion was not considered as an attempt to impeach the verdict, and the foreman's testimony and jurors' affidavits could be considered. It then determined that the jury's true answer to the interrogatory concerning plaintiff's actual damages was $1,095,000 and that Karl was entitled to 25 percent of this sum, or $273,750. This appeal followed.

## II.

Burlington Northern challenges the district court's decision to address the jury concerning its inconsistent verdicts and then to allow the jury to reconsider its answers. It first argues that the court should have given the parties and their counsel notice before it questioned the jury or gave the jury additional instructions. Burlington Northern contends that its counsel would have objected to the procedure followed by the court.

■ We find no error in the district court's actions. When attorneys voluntarily absent themselves from the courtroom and the court necessarily communicates with the jury in their absence, the court has not committed reversible error. *See Dickerson v. Pritchard,* 706 F.2d 256, 259 (8th Cir.1983). In this case, before the attorneys left the courtroom, the district court warned them of the possibility of receiving a note from the jury during its deliberations, and advised them to leave telephone numbers. Both attorneys chose not to be in the courtroom when the jury returned the verdict. Burlington Northern's counsel concedes that it received notification that the jury was returning. Counsel cannot now complain. Furthermore, all of the judge's communications with the jury were in open court and on the record, and

such communications were not erroneous as a matter of law. *See id.* at 259; *cf. Chicago, Rock Island & Pac. R.R. Co. v. Speth,* 404 F.2d 291, 294 (8th Cir.1968). We conclude that the district court did not act improperly in further instructing the jury and resubmitting the case in the absence of the attorneys.

■ Burlington Northern further maintains that Fed.R.Civ.P. 49(a), which sets out the requirements for submitting a case to the jury in special interrogatories, makes no provisions for resubmitting cases in the event of inconsistent verdicts. Burlington Northern argues that the district court instead should have first attempted to harmonize the jury's answers, *see Atlantic & Gulf Stevedores v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962), and if it could not do so, it should have granted a new trial. We are satisfied that the district court had the authority to resubmit the interrogatories to the jury.

Rule 49(a) provides that "[t]he court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact." Since the jury's answers provide the basis for the ultimate resolution, such answers must be consistent with each other. *Auwood v. Harry Brandt Booking Office, Inc.,* 850 F.2d 884, 890 (2d Cir.1988); *Morrison v. Frito-Lay, Inc.,* 546 F.2d 154, 160 (5th Cir.1977). This rule does not offer guidance as to the proper course of action to be taken when the jury's answers are found to be inconsistent. Recent case law, however, has made clear that if the inconsistency between special verdict answers is noticed prior to the dismissal of the jury, the district court has the discretion to resubmit the issue to the jury with a request for clarification. *Auwood,* 850 F.2d at 891; *Morrison,* 546 F.2d at 161. In affirming a district court's resubmission of an issue to the jury, the Fifth Circuit stated:

> The district judge, who has observed the jury during the trial, prepared the questions and explained them to the jury, is in the best position to determine whether the answers reflect confusion or uncer-

tainty. The judge also is in an excellent position to evaluate whether the jury will likely be able to resolve this uncertainty with proper guidance.

*Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1260 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989). The district court here did not overstep its authority in resubmitting the case to the jury.

■ Burlington Northern maintains that even if the district court has the authority to resubmit the case to the jury in the event of inconsistent answers, the jury's answers were not inherently inconsistent. It claims that upon close scrutiny of the interrogatories, once the jury found that Burlington Northern's negligence was not a proximate cause of the collision in Part 2, the jury's answer to Part 5 in assessing the percentage of fault attributable to each party and its answer to Part 6 in awarding damages to Karl became surplusage and should have been disregarded. We are not persuaded. The jury's finding in Part 2 that Burlington Northern's negligence was not the proximate cause of Karl's injury is directly at odds with its determination in Part 5 that Burlington Northern's negligence was 25 percent of the proximate cause of Karl's injuries. This was a logical inconsistency, and any attempt by the court to reconcile it would have required the court to speculate as to what the jury intended, and replace the jury's judgment with its own. *See Smith v. Updegraff,* 744 F.2d 1354, 1368 (8th Cir.1984).

■ Finally, Burlington Northern argues that the district court erred by subtly encouraging the jury to render a verdict in Karl's favor. Burlington Northern contends that the court assumed, when it addressed the jury concerning its inconsistent verdicts, that the jury intended to find Burlington Northern negligent and award Karl damages, and that the jury was mistaken only in its answer in Part 2 concerning proximate cause. A review of the complete transcript of the court's remarks, however, reveals that the court placed no pressure on the jury to change its answers, and remained neutral in its comments to the

jury. We are aware that "a jury must be totally immune from any possible coercion or subtle pressures to increase or decrease its decided verdict by reason of the court's interrogation and direction to reconsider its findings." *Speth,* 404 F.2d at 295. We are satisfied, however, that the court was required to call to the jury's attention the legal inconsistency between the proximate cause response and the latter responses, and that it phrased its remarks so as to not influence or coerce the jury. After explaining the conflict inherent in the responses, the district judge stated, "take a look and whatever you do is fine with me. I am certainly not trying to get you to change anything unless you decide that you might want to." Accordingly, we are satisfied that the district court committed no error in instructing the jury about its inconsistent verdicts and allowing the jury to reconsider its answers to special interrogatories.

### III.

■ We turn now to whether the district court erred in denying Burlington Northern's motion for judgment on the original verdict, and in amending the jury's verdict. The district court determined that the jury's answer to the damage interrogatory reflected an error in transmission, rather than an error in the verdict itself. Thus, it concluded that it could consider the juror's affidavits to "clarify" and ascertain the jury's "true verdict." We conclude, however, that the method by which the court ascertained the jury's "true verdict"—receiving testimony from the jurors after they had returned a verdict and after the jury had been discharged—is prohibited by Fed.R.Evid. 606(b). Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. * * * Nor may a juror's affidavit or evi-

dence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

This rule was adopted to prevent jurors from being harassed by the defeated party in an effort to secure from them evidence of facts which might be sufficient to set aside a verdict, and to assure the finality of the jury's verdict. *McDonald & U.S. Fidelity & Guar. Co. v. Pless*, 238 U.S. 264, 267–68, 35 S.Ct. 783, 784–85, 59 L.Ed. 1300 (1915). Rule 606(b) also serves to prevent fraud by individual jurors who could remain silent during deliberations and later assert that they were influenced by improper considerations. *United States v. Eagle*, 539 F.2d 1166, 1170 (8th Cir.1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977) (citing *Mattox v. United States*, 146 U.S. 140, 148, 13 S.Ct. 50, 52, 36 L.Ed. 917 (1892)). If the rule did not exist, the "secret thought of one juror" would have "the power to disturb the express conclusions of twelve." *Mattox*, 146 U.S. at 148, 13 S.Ct. at 52.

The district court was correct when it noted that Rule 606(b) does not bar juror testimony as to whether the verdict delivered in court was that actually agreed upon by the jury. *See United States v. Dotson*, 817 F.2d 1127, 1130 (5th Cir.), *modified on reh'g*, 821 F.2d 1034 (1987). Thus, the district court could consider a juror's testimony that through inadvertence, oversight or mistake the verdict announced was not the verdict on which the jurors had agreed. *Robles v. Exxon Corp.*, 862 F.2d 1201, 1207 n. 8 (5th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 1967, 104 L.Ed.2d 434 (1989); *G.A. Thompson, Inc. v. Partridge*, 636 F.2d 945, 963 (9th Cir.1981). The admission of a juror's testimony is proper to indicate the possibility of a "clerical error" in the verdict, but not the "validity" of the verdict. *Robles*, 862 F.2d at 1208.

The mistake made by the jury in this case, however, is not "clerical," but goes to the "validity" of the verdict. A clerical error would be one where the foreperson wrote down, in response to an interrogatory, a damage amount different from that agreed upon by the jury, *see Dunham v. Veterans of Foreign Wars Club of Muskegon, Post 446*, 104 Mich.App. 541, 543–44, 305 N.W.2d 260, 262 (1981), or where the foreperson mistakenly stated that the defendant was "guilty" when the jury had actually agreed that the defendant was not guilty, *see Dotson*, 817 F.2d at 1129. The error alleged here, however, involves more than just a clerical mistake by the jury, as it involves the jury's understanding of the court's instructions.

The foreman's testimony and the jurors' affidavits contain specific references to what the jurors understood or intended when the figure was written. The jurors did not state that the figure written by the foreman was different from that which they agreed upon, but indicated that the figure the foreman wrote down was intended to be a net figure, not a gross figure. Receiving such statements violates Rule 606(b) because the testimony relates to how the jury interpreted the court's instructions, and concerns the jurors' "mental processes," which is forbidden by the rule.

Numerous cases support this position. Closely analogous is *Peveto v. Sears, Roebuck & Co.*, 807 F.2d 486 (5th Cir.1987). There, the jury found the defendants to be 4 percent at fault and the plaintiffs to be 96 percent at fault, and awarded actual damages in the amount of $100,000. The court then entered judgment in favor of the plaintiffs for $4,000 (4% of $100,000). After the jury had been discharged, the plaintiff's counsel sought and received a hearing where six jurors testified that they had misunderstood their instructions and had reduced the $2,500,000 gross damage amount requested by plaintiffs by 96% to arrive at $100,000. The appellate court affirmed the district court's refusal to amend the verdict, holding that the juror testimony was barred from consideration by Rule 606(b), as it involved inquiry into the jurors' mental processes. *Id.* at 489.

In *Chicago, Rock Island & P. R.R. Co. v. Speth*, 404 F.2d 291 (8th Cir.1968), a jury assessed the plaintiff's contributory negligence in the amount of 40 percent and awarded the plaintiff $16,000 in damages.

After viewing the verdict, the district court sua sponte asked the jury whether the damage amount was a gross or net figure, and the jury responded that it was a net figure. The court then sent the jury back to recompute the "total damage irrespective of deductions, contributory negligence or anything else," and the jury returned with a verdict of $40,000. In reviewing the district court's decision to enter judgment for $40,000, we held:

> a trial judge may not have the same jury reconsider what appears to him to be a miscalculation of general damages. * * * It is well settled that a jury's misunderstanding of testimony, misapprehension of law, errors in computation or improper methods of computation, unsound reasoning or other improper motives cannot be used to impeach a verdict.

*Id.* at 295. Although the facts in *Speth* are somewhat different from the situation here, as the jury here had been discharged, the same legal principles would apply. In *Speth* we even considered the consequences if the jury had been discharged, and concluded that "if the verdict for $16,000.00 had been received, counsel could not have later shown by affidavit that the $16,000.00 was erroneously computed." *Id.* It is apparent that we deal here with a jury's misapprehension of the law set out in the court's instructions, which resulted in an error in computation or an improper method of computation. *Speth* makes clear that these considerations cannot be used to impeach a verdict.[6] *See also Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 782–83 (5th Cir.1983) (finding "no authority for the court to inquire, after the jurors' discharge, into whether they really meant what they said"); *University Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d

518, 547–48 & n. 43 (5th Cir.1974) ("[i]t is improper to interrogate a juror concerning what he meant by his verdict").

The district court's characterization of the error as one of "transmission" rather than one in the verdict itself sheds little illumination on the problem. The verdict in this case was transmitted, as are all verdicts, by words written by the foreman on a piece of paper. The piece of paper truly stated what the jury had agreed to. The affidavits of the jurors do no more than point to their intentions to award a net figure rather than a gross figure, thus demonstrating their misunderstanding of the court's clear instructions. Far from a simple error in transmission or in putting words or figures to paper, it is the jurors' mental processes that gave rise to the concerns at issue.

We conclude that the evidence of the jury's misinterpretation of its instructions is deemed incompetent and inadmissible under Rule 606(b), and should not have been considered by the district court in amending the verdict. This conclusion forecloses any basis for setting aside the verdict and ordering a new trial. As there is no other indication that the jury's first verdict was deficient, the judgment is reversed and remanded to the district court with instructions to reinstate the first verdict.

## IV.

■ Burlington Northern further contends that it did not have a duty to upgrade its traffic control and warning devices, and that Karl therefore cannot recover under that theory of negligence. It first argues that federal safety and railway acts preempt any claim of common law negligence based upon the inadequacy of the

---

**6.** We are aware that *Attridge v. Cencorp Div. of Dover Technologies Int'l, Inc.*, 836 F.2d 113 (2d Cir.1987), involving a similar factual situation, determined that there was clear miscommunication between the judge and the jury. The Second Circuit observed that the trial judge limited his inquiry to a single question: "What was your understanding as to what the verdict was; what was the jury verdict?" *Id.* at 117. It concluded that this question was asked to resolve doubts concerning the accuracy of the verdict and not to question the process by which those verdicts were reached. The Fifth Circuit in *Robles* stated that *Attridge* was irreconcilable with its earlier decision in *Peveto*, which it was required to follow as earlier circuit precedent. *Robles*, 862 F.2d at 1206 n. 5. We do not find *Attridge* persuasive but, in any event, it is contrary to *Speth*, which is binding upon us. Neither of the parties cited or relied on *Attridge*.

warning devices at the crossing.[7] It contends that since federal law grants to the Secretary of Transportation the power to authorize a local agency to regulate grade crossings, and since the local agency in this case approved the warning devices, that approval preempts any common law negligence claims. We find no merit to this argument.

■ In general, state laws may be preempted if they actually conflict with an express or implied federal declaration, or if the state law is in a field that is so pervasively controlled by federal law that no room is left for state rulemaking. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *see also Flanagan v. Germania,* 872 F.2d 231, 233–34 (8th Cir.1989); *Deford v. Soo Line R.R. Co.,* 867 F.2d 1080, 1084 (8th Cir.1989). Neither circumstance is present in this case. First, nothing suggests that Karl was forced to choose whether to follow federal or state law, a traditional test of whether state and federal laws are in actual conflict. *Cf. de la Cuesta,* 458 U.S. at 153, 102 S.Ct. at 3022. Additionally, Burlington Northern can point to no case law or legislative history to support the theory that Congress intended to completely occupy the field of railroad safety governance. Our conclusion is supported by *Runkle v. Burlington N.,* 188 Mont. 286, 299–300, 613 P.2d 982, 990–91 (1980), where Burlington Northern made a similar preemption argument with regard to the Federal–Aid Highway Act of 1973. The court held that the Act represents an effort by the federal government to improve the safety of grade crossings, but that it does not lessen the statutory or common law duty of a railroad to maintain a good and safe crossing. *Id.* Similarly, in *Marshall v. Burlington N., Inc.,* 720 F.2d 1149, 1153 (9th Cir.1983), the court held that the Railroad Safety Act did not occupy the field of railroad safety gov-

ernance. We conclude that Karl's negligence claim is not preempted by federal law.

■ Burlington Northern also argues that because Iowa statutes specifically set forth safety requirements applicable to grade crossings, and as Burlington Northern was not found to have violated these statutes, it should not face liability at common law for negligence.[8] It is well established, however, that "[c]ompliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions." *Restatement (Second) of Torts* § 288C (1965); *accord Schmitt v. Clayton County,* 284 N.W.2d 186, 190 (Iowa 1979). While Iowa courts have not yet had occasion to apply this rule in the context of a railway crossing accident, courts nationwide have adopted the *Restatement* standard in circumstances similar to those here. *See* Dueffert, *The Role of Regulatory Compliance in Tort Actions,* 26 Harv.J. on Legis. 175, 180–88 (1989). The district court did not err in submitting the issue of Burlington Northern's negligence to the jury.

■ Burlington Northern further argues that the jury should not have considered whether this crossing was ultrahazardous, since the state had not made such a determination under Iowa Code § 307.26(5)(b) (1985), which provides that "[a] railroad crossing shall not be found to be particularly hazardous for any purpose unless the [Department of Transportation] has determined it to be particularly hazardous." The Supreme Court of Iowa has rejected Burlington Northern's argument that the Iowa legislature wished to prohibit juries from considering whether a crossing is ultrahazardous, and concluded that the language of the Iowa statute was not so clear as to obviate judicial construction. *See Hines v. Illinois Cent. Gulf R.R.,* 330

---

**7.** Burlington Northern specifically argues that the Federal Highway Safety Act, 23 U.S.C. § 402 (1982), and the Federal Railroad Safety Act, 45 U.S.C. §§ 433, 434 (1982), preempt Karl's common law negligence claims.

**8.** Burlington Northern specifically points to Iowa Code § 327G.2 (1985), which addresses the safety requirements for a crossing, and § 327G.13 (1985), which addresses the signals at road crossings.

N.W.2d 284, 288 (Iowa 1983). The court construed the statute in its entirety and concluded that it was not "intended to determine civil liability." *Id.* at 289. *See also Sullivan v. Chicago & N.W. Transp.*, 326 N.W.2d 320 (Iowa 1982). Accordingly, we conclude that the question was properly submitted to the jury.

## V.

■■ Burlington Northern also challenges the district court's admission of a videotape offered by Karl to show the configuration of the crossing, and the appearance of the warning light where the accident occurred. The standard of reviewing the admissibility of evidence is whether the district court abused its discretion in admitting such evidence. *Hicks v. Mickelson,* 835 F.2d 721, 726 (8th Cir.1987). Although Burlington Northern did object to the admission of the video, it later offered its own video of a recreation of the accident. We cannot say that the court abused its discretion here.

## VI.

■■ Burlington Northern alleges error in the district court's decision to admit the testimony of Karl's expert, Dr. William Berg, who is a civil engineer and professor of highway and traffic engineering, transportation planning, and accident construction. Burlington Northern argues that Berg's opinions were irrelevant because Burlington Northern had no duty to upgrade the crossing signals, were improper as they were based on past accidents at the crossing which were not comparable, and invaded the prerogative of the jury. From a review of the record, we cannot say that the admission of this testimony was a clear and prejudicial abuse of discretion. *See Mickelson,* 835 at 726.

## VII.

■■ Finally, Burlington Northern maintains that the district court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict. In reviewing the district court's decision to deny these motions, we must consider the evidence in a light most favorable to Karl and give her the benefit of all reasonable inferences. *Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1218 (8th Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). If the evidence is such that reasonable jurors could differ as to the conclusions that could be drawn, and "there is substantial evidence to support the jury's verdict, we must uphold that verdict." *Robertson Oil Co. v. Phillips Petroleum Co.,* 871 F.2d 1368, 1371 (8th Cir.1989); *see also Loudermill v. Dow Chem. Co.,* 863 F.2d 566, 570 (8th Cir.1988).

Burlington Northern contends that there was insufficient evidence that its failure to upgrade the crossing was the proximate cause of Karl's injuries. Karl's expert, Dr. Berg, testified that Burlington Northern was under a duty to upgrade the crossing, enumerated the factors he considered in evaluating the crossing, and concluded that the duty had been violated because the crossing was inadequate. Further, Karl testified about her perception of the collision, describing the characteristics of the crossing and the lighting, and her difficulty in seeing both directions. Based upon the testimony of these witnesses, when viewed in the light most favorable to Karl, we are satisfied that sufficient evidence supported the jury's verdict.

## VIII.

In sum, we hold that the jury could properly find that Burlington Northern had a common law duty to upgrade the crossing. We further conclude that the district court did not err in admitting into evidence Karl's videotape of the accident site and her expert witness' testimony, in resubmitting the case to the jury because of inconsistent verdicts, or in denying Burlington Northern's motions for a directed verdict and judgment notwithstanding the verdict. We conclude, however, that the court erred in amending the amount of damages after the verdict was entered. We therefore remand this case to the district court with instructions to reinstate the original ver-

dict, and to enter judgment for Karl in the amount of 25% of $273,750.00.