UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1125

DONALD PLUMMER,

Plaintiff-Appellant,

v.

SPRINGFIELD TERMINAL RAILWAY COMPANY,

Defendant-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge]

Before

Torruella and Selya, Circuit Judges,

and Woodlock,* District Judge.

Jeremy R. Feedore, with whom McClung, Peters and Simon, was

on brief for appellant.
Glen L. Porter, with whom Eaton, Peabody, Bradford & Veague,

P.A., was on brief for appellee.

September 23, 1993

* Of the District of Massachusetts, sitting by designation.

TORRUELLA, Circuit Judge. Appellant Donald Plummer

sued appellee Springfield Terminal Railway Company

("Springfield") under the Federal Employers' Liability Act, 45

U.S.C. 51-60 (1986), for injuries sustained as a Springfield

employee. In Plummer's complaint, he requested $650,000 in

damages. After a four day trial, the jury found Springfield 12%

at fault for the injuries and Plummer 88% at fault.

At first, the jury failed to answer the interrogatory

that asked the amount of damages awarded. After two bench

conferences, the court sent the jury back to make the

determination. The relevant interrogatory asked the jury to

determine the amount that would "fairly and adequately compensate

the plaintiff Donald Plummer for his injuries." Under that

question, the verdict form also stated, "[i]n determining the

total amount of damages, do not make any reduction because of the

negligence, if any, of the plaintiff." Soon after, the jury

returned with a figure of $78,000. Because $78,000 is exactly

12% of $650,000, Plummer's counsel requested that the court ask

the jury if the figure was reduced for Plummer's own negligence.

The court denied the request, discharged the jury and, after

reducing the $78,000 figure by 88%, ultimately entered a judgment

of $9,860 for appellant.

Plummer contends that when his attorney asked the jury

foreperson later in the day after the jury had been discharged

whether the $78,000 figure represented an amount already reduced

for Plummer's negligence, the juror conceded that it had.

-2-

Plummer also contends that he immediately informed the court of

this conversation and requested a voir dire of the jury to

determine their true intention,1 but that the court refused to

reconvene the jury.

Several days later, Plummer formally moved to alter the

judgment. The district court denied the motion, see Plummer v.

Springfield Terminal Ry. Co., No. 91-0114-B (D. Maine Jan. 20,

1993), and Plummer appealed. We affirm.

DISCUSSION

Plummer's principal argument is that the court should

have either conducted a voir dire of the jury, or permitted

Plummer to obtain affidavits from the jurors in order to

determine whether the damage award was reduced to account for his

negligence.

Under Federal Rule of Evidence 606(b), when questioned

about the validity of a verdict, a juror may not testify about

the jury's deliberations or the juror's mental processes during

deliberation with two exceptions: a juror may testify to (1) the

deliberations with respect to outside influence; and (2)

"extraneous prejudicial information."2 The advisory committee

1 The record contains no indication of this request.

2 Rule 606(b) provides:

Upon an inquiry into the validity of a
verdict or indictment, a juror may not
testify as to any matter or statement
occurring during the course of the jury's
deliberations or to the effect of
anything upon that or any other juror's
mind or emotions as influencing the juror

-3-

notes for Rule 606(b) explain that "[t]he values sought to be

promoted by excluding the evidence include freedom of

deliberation, stability and finality of verdicts, and protection

of jurors against annoyance and embarrassment." Similarly, we

have observed that "the unbridled interviewing of jurors could

easily lead to their harassment, to the exploitation of their

thought processes, and to diminished confidence in jury verdicts,

as well as to unbalanced trial results depending unduly on the

relative resources of the parties." United States v. Kepreos,

759 F.2d 961, 967 (1st Cir.), cert. denied, 474 U.S. 901 (1985).

At the same time, of course, courts must avoid "simply putting

verdicts beyond effective reach [, which] can only promote

irregularity and injustice." Fed. R. Evid. 606(b) advisory

committee note.

A number of circuits hold, and we agree, that juror

testimony regarding an alleged clerical error, such as announcing

a verdict different than that agreed upon, does not challenge the

validity of the verdict or the deliberation or mental processes,

and therefore is not subject to Rule 606(b). See, e.g., Karl v.

to assent to or dissent from the verdict
or indictment or concerning the juror's
mental processes in connection therewith,
except that a juror may testify on the
question whether extraneous prejudicial
information was improperly brought to
bear upon any juror. Nor may a juror's
affidavit or evidence of any statement by
the juror concerning a matter about which
the juror would be precluded from
testifying be received for these
purposes.

-4-

Burlington Northern Ry. Co., 880 F.2d 68, 73-74 (8th Cir. 1989);

Eastridge Development Co. v. Halpert Associates, 853 F.2d 772,

783 (10th Cir. 1988); see also Robles v. Exxon Corp., 862 F.2d

1201, 1207-08 (5th Cir. 1989), cert. denied, 490 U.S. 1051

(1989).

In the present case, Plummer similarly argues that the

rendered verdict was not the one agreed upon by the jury, and

therefore that his requested inquiry does not invoke Rule 606(b).

Several circuits might find this argument acceptable.

In Eastridge Development Co., for example, the jury, contrary to

the court's instructions, reduced its verdict by the percentage

of the plaintiff's own negligence. The district court

interrogated the jury, accepted affidavits from the jury as to

their damages calculation, and amended the ultimate award to

reflect the jury's decision. The Tenth Circuit accepted the

district court's rationale that the jury made a clerical error,

and that the inquiry therefore did not violate Rule 606(b). See

also Attridge v. Cencorp Div. of Dover Tech. Int'l, Inc., 836

F.2d 113, 116-17 (2d Cir. 1987).

By contrast, the Eighth Circuit in Karl, 880 F.2d at

73-74, reversed similar actions by a district court judge when

the jury made the same mistake. The court in that case found

that the inquiry was improper because it went to the thought

processes underlying the verdict, rather than the verdict's

accuracy in capturing what the jurors had agreed upon.

We agree with the district court that Karl's approach

-5-

better reflects the goals of Rule 606(b) and our opinion in

Kepreos because it better insulates jury deliberations. In the

present case, the verdict form, which the judge went over with

the jury,3 instructed the jury not to reduce the damages verdict

based on Plummer's negligence, and Plummer never objected to

these instructions.4 Plummer's current allegations, however,

suggest that the jurors believed that the rendered verdict would

have a different effect on the parties, based on their

3 Specifically, the judge stated the following with respect to
the relevant interrogatory:

And then finally, if you have reached
this, what amount of money would fairly
and adequately compensate the plaintiff
should - plaintiff Donald Plummer for his
injuries. That's the full amount,
irregardless of what your answer to
number five is.

Determine the total amount of damages.
Do not make any reductions. If you have
answered three, four, and five, you do
not change this figure at all.

4 At oral argument, Plummer stated that his appellate brief
implicitly assigns error to the instructions on that issue. We
can find no such argument in his brief. Although Plummer's brief
states that he appeals from his motion to alter the district
court's judgment which complained that the court failed to
instruct the jury on the disputed issue, the brief does not
mention a failure to instruct. Nor does the brief request a new
trial on the issue of damages. Thus, we need not address the
issue. See Ryan v. Royal Ins. Co. of America, 916 F.2d 731, 734

(1st Cir. 1990) ("issues adverted to on appeal in a perfunctory
manner, unaccompanied by some developed argumentation, are deemed
to have been abandoned"). Moreover, even if Plummer's brief had
made this argument, our review of instructions and verdict forms
that were not challenged before jury deliberation is only for
plain error. Phav v. Trueblood, Inc., 915 F.2d 764, 769 (1st

Cir. 1990). Although the instructions might not have been
ideally formulated, they were given to the jury on the verdict
form, and we observe no plain error.

-6-

understanding of the court's instructions.5 Karl, 880 F.2d at

73-74; see also Robles, 862 F.2d at 1207-08. Plummer does not

contend that the jurors never agreed upon the rendered verdict -

the number that the jury chose is not in dispute. Accordingly,

the requested inquiry went to what the jurors were thinking when

they chose the number that they did and whether their thinking

was sound.6

See Karl, 880 F.2d at 73-74; Robles, 862 F.2d at 1205; Fed. R.

Evid. 606(b), advisory committee note ("testimony or affidavits

of jurors have been held incompetent to show . . .

misinterpretations of instructions) (citing Farmers Coop Elev.

Ass'n v. Strand, 382 F.2d 224, 230 (8th Cir.), cert. denied, 389

U.S. 1014 (1967)); but see Attridge, 836 F.2d at 117

(characterizing similar inquiry as "ascertaining what the jury

decided and not why they did so").

Plummer asked the district court to examine the jurors

5 We construe the instruction on the verdict form as part of the
court's instructions to the jury.

6 We are unpersuaded by Plummer's argument that permitting him
to obtain affidavits from the jurors would have alleviated the
Kepreos and Rule 606(b) concerns. Like testimony, juror

affidavits would diminish the stability of jury verdicts and the
jury's freedom to deliberate, and could just as easily lead to
harassment. Additionally, through affidavits, as through
testimony, "the 'secret thought of one juror' would have 'the
power to disturb the express conclusions of twelve.'" Karl, 880

F.2d at 74 (quoting Mattox v. United States, 146 U.S. 140, 148

(1892)). Of course, Plummer's counsel is ill positioned to argue
that his proposed procedure would alleviate the Kepreos concerns.

Plummer's counsel already had spoken to at least one of the
jurors ex parte. In Kepreos, 759 F.2d at 967, this court set out

a clear rule forbidding "post verdict interview of jurors by
counsel." By discussing the verdict with the jury foreperson,
Plummer's attorney violated this rule.

-7-

after the jury had already been discharged. This was too late.7

We cannot conclude that the district court erred in refusing

further inquiry.

Finally, Plummer argues, in the alternative, that the

district court should have stricken the jury's finding that he

was 88% at fault because it was excessive and contrary to the

7 We note that on the two occasions the jury returned with a
verdict before it was discharged, Plummer's counsel successively
intimated and requested that the court should inquire of the
jurors regarding whether they were reducing the damage figure to
reflect Plummer's own negligence. At oral argument, Plummer
characterized his pre-discharge efforts in this regard
alternatively as requests for inquiries or requests for
supplemental jury instructions, depending on the question he
faced from the panel. Because Plummer did not develop his vague
assertions at oral argument, we consider the issue of the pre-
discharge efforts at jury inquiry only as it is explicated in his
brief. See Ryan, 916 F.2d at 734. And his brief fails to argue

that the court erred in disregarding them.

Plummer's brief frames the issue he is presenting to us as the
court's refusal "to conduct a voir dire of the jury panel to
clarify their verdict in light of the patently mistaken amount
recorded . . . ." Yet, however characterized, neither of
Plummer's pre-discharge efforts at inquiry sought a voir dire to
clarify the recorded amount in the verdict. Plummer's counsel's
first intimation of concern, when the jury returned with an
incomplete verdict slip, did not seek clarification in light of a
recorded amount. When the concern ripened into a specific
request after the jury returned on the second occasion with the
$78,000 figure, the court properly described the request, without
objection by Plummer, as seeking a "further written question to
the jury." Such an interrogatory would not constitute a voir
dire. More fundamentally, Plummer mentions in his brief only the
later effort at pre-discharge inquiry and then simply as an
explanation for why he did not request a poll of the jury.

While we recognize that the trial court is under an obligation
"with appropriate instructions, [to] afford[] the jury a timely
opportunity to straighten out both apparent and possible
mistakes," Poduska v. Ward, 895 F.2d 854, 857 (1st Cir. 1990), we

can find no sufficient argument that the district court abused
its discretion in meeting that obligation with respect to the
pre-discharge efforts at inquiry made by plaintiff here.

-8-

weight of the evidence. However, Plummer failed to provide a

transcript of the evidence offered at trial on the liability

issue.

Under Federal Rule of Appellate Procedure 10(b),

[i]f the appellant intends to urge on
appeal that a finding or conclusion is
unsupported by the evidence or is
contrary to the evidence, the appellant
shall include in the record a transcript
of all evidence relevant to such finding
or conclusion.

See also Syncom Capital Corp. v. Wade, 924 F.2d 167 (9th Cir.

1991). Accordingly, "[w]here an appellant raises issues that are

factually dependent yet fails to provide a transcript of the

pertinent proceedings in the district court, this circuit has

repeatedly held that we will not review the allegations." Mu iz

Ram rez v. Puerto Rico Fire Services, 757 F.2d 1357, 1358 (1st

Cir. 1985); see also Farrar v. Cain, 756 F.2d 1148 (5th Cir.

1985). Because Plummer failed to provide a transcript of the

relevant evidence, we do not reach the merits of his argument.8

Similarly, Plummer's assertion that the court erred in

instructing the jury on contributory negligence in light of the

lack of evidence on the issue also must fail. Without a

transcript of the evidence presented on the liability issue, we

cannot determine whether evidence of Plummer's negligence

8 Although we have considered claims when feasible without the
transcript of the relevant proceedings, Valed n Mart nez v.

Hospital Presbiteriano, 806 F.2d 1128, 1135 (1st Cir. 1986), we

can find no fair or meaningful method to review this evidentiary
issue without a transcript of the evidence presented. Of course,
the transcript of the trial's closing statements provided by
Plummer cannot be considered evidence.

-9-

existed.

Affirmed.

-10-