IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-002

Filing Date:  November 12, 2009

Docket No. 28,924

DONNA S. SHADOAN,

    Plaintiff-Appellee,

v.

CITIES OF GOLD CASINO,
POJOAQUE GAMING, INC.,
and PUEBLO OF POJOAQUE,

    Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
Timothy L. Garcia, District Judge

Voorhees Law Firm
Scott F. Voorhees
Santa Fe, NM

for Appellee

Ray A. Padilla, P.C.
Ray A. Padilla
Albuquerque, NM

Arlyn G. Crow, P.C.
Arlyn G. Crow
Albuquerque, NM

for Appellants

OPINION

ROBLES, Judge.

1

**{1}**     Cities of Gold Casino, Pojoaque Gaming, Inc., and Pueblo of Pojoaque (Defendants) appeal a district court order granting Donna Shadoan (Plaintiff) a new trial.   We hold that jurors' affidavits that evidence a misunderstanding of instructions or process in reaching a verdict that might have produced a different verdict do not evidence a clerical error in the verdict and are not permissibly considered under Rule 11-606(B).  Since the district court considered such evidence, we reverse.

## I.     BACKGROUND

**{2}**     On December 9, 2001, at approximately 7:00 p.m., Plaintiff was robbed and injured in the parking lot of the Cities of Gold Casino as she was getting out of her car.  Plaintiff filed suit against Defendants "based on the lack of security in the casino parking lot."  The record reflects that the jury heard expert testimony from Plaintiff and Defendants regarding dizziness that Plaintiff has experienced since the attack.  During closing arguments, Plaintiff urged the jury that she was entitled to $448,500 in compensatory damages arising from the assault for lost income and pain and suffering, as well as medical expenses totaling $9,568. After deliberation, the jury returned a verdict for Plaintiff in the amount of $4,784 and found that Defendants were 20% responsible for Plaintiff's injuries.  The transcript reveals that the district judge reviewed the verdict, read it in open court, then asked the foreperson if his reading was "correct and accurate as to the verdict of [the] jury" to which the foreperson replied with an affirmative response.   The district judge then concluded the case and discharged the jury.

**{3}**     Following the proceedings, the district judge met with the jury in the jury room for a debriefing.  While there is no record of the post-trial debriefing, it would appear that the jury told the judge that they had intended to give Plaintiff half of her medical expenses and 20% of the $448,500 that Plaintiff had asked for in closing arguments.  The judge responded by stating that the jury had to speak to the attorneys for the parties.   Following the debriefing, one of the jurors approached both parties, who were apparently still in the building at the end of the trial and told the parties about the confusion surrounding the verdict form.

**{4}**     On March 20, 2008, Plaintiff filed a motion for additur or, in the alternative, new trial, and attached three essentially identical affidavits from three jurors.  The affidavits stated, in pertinent part:

> 2.     I served as a juror in the trial of the case of [Plaintiff] versus [Defendants] from February 26, 2008 through February 29, 2008, during trial of the case, and jury deliberations on March 4, 2008 and March 5, 2008.
>
> 3.     During closing argument[,] the attorney for [Plaintiff] asked the jury to award her $120,000[] in lost income and $328,500[] for a total of $448,500[].

4.    After much deliberation[,] the [j]ury decided that [Defendants] [were] 20% at fault for [Plaintiff's] injuries. We also decided that [Plaintiff] should receive $4,784[] as one half of her medical bills.

5.    When we filled out the Verdict[,] we placed 20% fault on [Defendants] and *intended* that [Plaintiff] should receive 20% of the $448,500[] her attorney asked the jury for.

6.    After the verdict was read in court and the jury was discharged, [the trial judge] met with the jury in the jury room. In the course of the conversation[,] we explained to him that we *intended* to give [Plaintiff] 20% of the full damages that her attorney asked for plus one half of the medical bills. The jury *intended* the full award to be $89,600[] plus $4,784[] for a total award of $94,384[].

7.    When we were talking to [the trial judge,] we first realized that the verdict form had been filled out incorrectly because it only gave [Plaintiff] 20% of $4,784[]. The verdict form did not reflect the *intention* of the jury.

(Emphasis added.)

**{5}** At the hearing on Plaintiff's motion, the district judge made clear he would not grant additur. Plaintiff did not pursue the point further and does not argue for additur on appeal. Additionally, in his order granting a new trial, the district judge stated that he was not considering what the jury told him during the debriefing in reaching his decision. It was specifically the difference between the dollar amounts set forth in the verdict form and the three affidavits that convinced the court to exercise equitable jurisdiction and to grant Plaintiff a new trial based on equity. In the same order, the district judge allowed an application for interlocutory appeal in accordance with NMSA 1978, Section 39-3-4 (1999) on the issue of whether the district court had exceeded its equitable authority by granting a new trial.

## II.    DISCUSSION

**{6}** Defendants argue that Rule 11-606(B) prohibits juror testimony or affidavits that seek to impeach the verdict of the jury, and it was error for the district judge to consider the affidavits in his decision to grant a new trial. The admission of evidence is reviewed under an abuse of discretion standard. However, the review of the interpretation of the rule behind the ruling is a matter of law, which we review de novo. *See Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 13, 146 N.M. 453, 212 P.3d 341.

**{7}** Rule 11-606(B) states:

Upon an inquiry into the validity of a verdict or indictment, *a juror may not testify as to any matter or statement occurring during the course of the jury's*

3

*deliberations* or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment *or concerning the juror's mental processes in connection therewith*. But *a juror may testify about* (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) *whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.*

(Emphasis added.)

{8}     The third exception to the rule was incorporated into the New Mexico Rules of Evidence by Supreme Court Order 07-8300-35, effective February 1, 2008. As the Committee Commentary for that rule notes:

> Paragraph B was amended to be consistent with the 2006 amendments to federal rule 606(b). The amendments include a third, narrow exception to the general prohibition against permitting jurors to testify about their verdicts or indictments. The third exception permits the correction of clerical errors in the verdict form to reflect the true intent of the jurors. The committee believes this to be consistent with New Mexico law.

The question then is what constitutes a clerical error. Because New Mexico's rule mirrors the federal rule, this Court may look to federal law for further guidance in interpreting New Mexico's Rule 11-606(B). *See Rios v. Danuser Mach. Co.*, 110 N.M. 87, 90, 792 P.2d 419, 422 (Ct. App. 1990); *Duran v. Lovato*, 99 N.M. 242, 247, 656 P.2d 905, 910 (Ct. App. 1982).

{9}     Before the 2006 Amendment to Federal Rule 606(b), there was a split in opinion among the circuits as to what constituted a clerical error. *See McCullough v. Consol. Rail Corp.*, 937 F.2d 1167, 1169 (6th Cir. 1991). One line of cases held that, where a court seeks to correct a mistake in transmission of the verdict from the jury, evidence in the form of jurors' affidavits and testimony may be received. *See, e.g.*, *Attridge v. Cencorp Div. of Dover Techs. Int'l, Inc.*, 836 F.2d 113, 117 (2d Cir. 1987) (holding that jurors' interviews obtained after the jury was discharged were proper because they were used to ascertain what the verdict was, not why the jury decided what it did); *Eastridge Dev. Co. v. Halpert Assocs., Inc.*, 853 F.2d 772, 783 (10th Cir. 1988) (concluding that the amending of a verdict by the trial court in light of jurors' interviews was proper because it sought to reflect the true decision of the jury).

{10}     However, another line of cases followed the narrower interpretation that "juror testimony regarding an alleged clerical error, such as announcing a verdict different than that agreed upon, does not challenge the validity of the verdict or the deliberation of mental processes, and therefore is not subject to Rule 606(b)," but "juror testimony to prove that

4

the jurors were operating under a misunderstanding about the consequences of the result that they agreed upon" is prohibited. Fed. R. Evid. 606(b) 2006 Amendment notes. *See, e.g.*, *Karl v. Burlington N. R.R. Co.*, 880 F.2d 68, 75 (8th Cir. 1989) (concluding that it was error to receive jurors' testimony on whether a verdict was the result of the jury's misunderstanding of instructions because it related to how the jury interpreted the court's instructions and concerned the jurors' "mental processes"); *Robles v. Exxon Corp.*, 862 F.2d 1201, 1208 (5th Cir. 1989) (stating that a "clerical error" is one in which the foreperson mistakenly writes down a number or word that is different than what the jury had actually agreed upon, not what the jury had intended or interpreted from the court's instructions). The 2006 Amendment to Rule 11-606(B) specifically chose to follow the latter.

**{11}** In the immediate case, the affidavits explain what the intentions of the jury were, but they do not state that what was written on the verdict form was not what the jury agreed on. As the *Robles* court noted:

> The error here is not "clerical," as would be the case where the jury foreperson wrote down, in response to an interrogatory, a number different from that agreed upon by the jury, or mistakenly stated that the defendant was "guilty" when the jury had actually agreed that the defendant was not guilty. Rather, the error alleged here goes to the substance of what the jury was asked to decide, necessarily implicating the jury's mental processes insofar as it questions the jury's understanding of the court's instructions and application of those instructions to the facts of the case.

862 F.2d at 1208 (footnote omitted).

**{12}** New Mexico common law is consistent with this interpretation of the clerical error exception. In *McKinney v. Smith*, our Supreme Court held that jurors' affidavits obtained after the jury was discharged could not be used to show what the jury had intended the plaintiff's award to be. 63 N.M. 477, 478-79, 322 P.2d 110, 111 (1958). The court stated that if there was doubt as to the jury's verdict, the trial court "should have returned [the jury] to the jury room and have them amend their verdict." *Id.* at 479. Likewise, in *Hood v. Fulkerson*, the court held that post-verdict jury statements could not be used by the trial court to amend the verdict and adjust the plaintiff's award. 102 N.M. 677, 679, 699 P.2d 608, 610 (1985). There, the court concluded that it was the province of the jury to arrive at a verdict, and affidavits stating what the jury had intended the award to be simply did not allow the trial court to correct the verdict. *Id.* at 679. Finally, in *Goldenberg v. Law*, New Mexico observed that allowance of juror affidavits to impeach a verdict could give a single individual the power "to set aside the verdict by his own affidavit." 17 N.M. 546, 556, 131 P. 499, 501-02 (1913).

**{13}** The policy reasons behind Rule 606 are relevant here. As the rule stands now, it protects jurors from harassment by a party who may wish to reopen or relitigate a case and would require the jury's continued involvement long after a verdict was reached. *See* *McKinney*, 63 N.M. at 479, 322 P.2d at 111; *see also Karl*, 880 F.2d at 74. Moreover, jury deliberation is intended to be private, and the potential for deliberations to be open to public

investigation would cause a chilling effect and prevent jurors from functioning effectively. *See Con't Cas. Co. v. Howard*, 775 F.2d 876, 885 (7th Cir. 1985). The rule also dissuades fraud, promotes finality in litigation, and preserves the "community's trust in a system that relies on the decisions of laypeople [that] would all be undermined by a barrage of post[-]verdict scrutiny." *United States v. Benally*, 546 F.3d 1230, 1234 (10th Cir. 2008) (alteration in original) (internal quotation marks and citations omitted). To hold otherwise would make deliberations reviewable, and the final authority of a verdict would not be by jury, but by a reviewing court. *Id.* at 1233.

**{14}** To the extent that Plaintiff encourages this Court to adopt a broader interpretation of the rule's exception, we decline to do so. In the process of a jury trial, there will always be the possibility that jurors will misunderstand the law or consider improper factors in reaching a verdict. However, "the social costs of such error are outweighed by the need for finality to litigation, to protect jurors from harassment after a verdict is rendered, and to prevent the possible exploitation of disgruntled ex-jurors." *Peveto v. Sears, Roebuck & Co.*, 807 F.2d 486, 489 (5th Cir. 1987) (footnote omitted). The rule against the admission of affidavits of jurors to vitiate a verdict is founded upon considerations of public policy and, absent an exception to the rule, it should not be departed from to afford relief in supposed hard cases. *See Goldenberg*, 17 N.M. at 556, 131 P. at 502.

**{15}** As a final point, we note that the potential for errors in verdict forms could be greatly reduced by polling of the jury after verdict, an event that did not happen here. *See* Fed. R. Evid. 606(b) 2006 Amendment notes (stating the advantages to polling a jury after verdict). Although Plaintiff argues that the district judge did not allow her an opportunity to poll the jury, a review of the record leads us to the opposite conclusion. We primarily note that the district judge specifically asked Plaintiff after the verdict was read if there were "any issues for the record before I excuse everyone," at which time, Plaintiff did not ask for the jury to be polled. Additionally, while a party in a civil case may be entitled as a matter of right to have the jury polled upon making a proper request, *see Levine v. Gallup Sand & Gravel Co.*, 82 N.M. 703, 704, 487 P.2d 131, 132 (1971), Plaintiff does not argue and has not demonstrated that it is the district court's burden to make the request for the parties and ensure that an answer is provided and preserved for the record.

**{16}** Having concluded that the jurors' affidavits should have been stricken, we now turn to whether the district court erred in granting a new trial under the facts of this case. A district court has discretion in setting aside a judgment, and this Court will not interfere absent a showing of an abuse of that discretion. *Phelps Dodge Corp. v. Guerra*, 92 N.M. 47, 51, 582 P.2d 819, 823 (1978). A trial court abuses its discretion in granting a new trial when there is no proper showing of material grounds to support the claims on which the application for relief depends. *See Rios*, 110 N.M. at 91, 792 P.2d at 420.

**{17}** As an initial matter, we notice that Plaintiff does not argue that the district judge relied on his own interactions with the jury in granting a new trial. *See* Rule 11-605 NMRA ("The judge presiding at the trial may not testify in that trial as a witness."); Rule 11-606(B) ("A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying."). Likewise, the district

judge stated in his order that he was not relying on the events that occurred during the jury debriefing in reaching his decision to grant a new trial. As we stated above, the district court appears to have relied solely on the difference between the dollar amounts in the affidavits and the verdict form. We conclude that because the affidavits were precluded by Rule 11-606(B), and the record does not otherwise support the existence of an error in the verdict form, there were no grounds for the district court to grant a new trial in this case.

**{18}** Last, Plaintiff argues that the mistaken verdict does not provide adequate compensation because it awarded only medical bills and, citing to *Martinez*, 2004-NMSC-006, ¶ 21, Plaintiff urges that the verdict as it stands disregards Plaintiff's pain and suffering. However, the jury set Plaintiff's damages at $4,784 on a verdict form that did not itemize damages, but merely provided a lump-sum award. Without some way of determining what amount the jury intended to give in pain and suffering damages, this Court is left to speculate as to what the amounts might have been. "[I]t is not the duty of the appellate court to evaluate the value of pain and suffering" even if the jury's award "appears quite miserly." *Baxter v. Gannaway*, 113 N.M. 45, 49, 822 P.2d 1128, 1132 (Ct. App. 1991). Given the conflicting testimony of this case and the weight of the evidence presented, we cannot say that the jury's verdict shocked the conscience of the district court, especially in light of the fact that the district judge did not grant a new trial until weeks later and specifically cited his reason as being the irreconcilable monetary amounts.

## III. CONCLUSION

**{19}** The district court erred in considering the post-verdict jurors' affidavits. We therefore remand this case to the district court with instructions to reinstate the original verdict and to enter judgment for Plaintiff in the amount of 20% of $4,784.

**{20}** **IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**I CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

**MICHAEL D. BUSTAMANTE, Judge (specially concurring)**

**Bustamante, Judge (specially concurring).**

**{21}** I specially concur in the result reached by the majority. The committee commentary to the federal counterpart to our Rule 11-606(B) in particular makes it clear that only pure transcription errors will be recognized as "clerical" errors. I write to emphasize just how

narrow this approach is and how it will tend to stifle any consideration of jury missteps which could be addressed without delving into jury deliberations.

**{22}** In *Attridge v. Cencorp Division of Dover Technologies International, Inc.*, 836 F.2d 113 (2d Cir. 1987), for example, two jurors indicated to the bailiff that the verdict delivered at the end of the trial was intended to represent a "net recovery . . . after any reductions for comparative negligence, rather than an unadjusted verdict." *Id.* at 115. The bailiff reported the conversation to the judge who reported the conversation to the parties. The following day the trial judge spoke with the jurors asking them what their understanding as to what the verdict was. The jurors unanimously agreed that the amounts written on the verdict forms were meant to be net recoveries. The trial judge adjusted the final judgment to reflect the jury reports.

**{23}** On appeal, the Second Circuit affirmed noting that the jury inquiry was acceptable because the court was trying to determine what the jury actually agreed to. Citing to *Mount Airy Lodge, Inc. v. Upjohn Company*, 96 F.R.D. 378 (E.D. Pa. 1982), the court noted: "The interviews were proper because they were designed to ascertain what the jury decided and not why they did so." *Attridge*, 836 F.2d at 117.

**{24}** Under the rule we follow today, *Attridge* would result in a reversal even though the jury unanimously agreed, in effect "we misread the instruction."

**{25}** I submit that such a result would not serve the ends of justice and are not necessary to protect the jury process and jurors from undue intrusion. Even *Robles* —one of the cases most heavily relied upon by the federal rule committee commentary—noted that the Fifth Circuit had held "that [R]ule 606([B]) does not bar juror testimony as to whether the verdict delivered in open court was actually that agreed upon by the jury." 862 F.2d at 1207. *Robles* then went on to limit the rule to the very narrow type of "clerical" error described by the committee commentary we now follow. *Robles* does not explain, however, why its prior formulations were not workable or why cases such as *Attridge* were wrong. Our suggestions concerning polling the jury are valid, but polling will not correct a jury's simple misreading, for example, of a comparative negligence verdict form.

_____

**MICHAEL D. BUSTAMANTE, Judge.**

**APPENDIX**

**VERDICT**

On the questions submitted, the jury finds as follows:

Question No. 1:      Was [Defendant] negligent?

Answer:              **Yes**[.]

If the answer to Question No. 1 is "No[,"] you are not to answer further questions. Your foreperson must sign this special verdict, which will be your verdict for [Defendant] and against [Plaintiff], and you will all return to open court.

If the answer to Question No. 1 is "Yes[,"] you are to answer Question No. 2.

Question No. 2:     Was any negligence of [D]efendant a cause of [P]laintiff's injurires and damages?

Answer:          **Yes**[.]

If the answer to Question No. 2 is "No[,"] you are not to answer further questions. Your foreperson must sign this special verdict, which will be your verdict for [Defendant] and against [Plaintiff], and you will return to open court.

If the answer to Question No. 2 is "Yes[,"] you are to answer the remaining questions on this special verdict form. When as many as ten of you have agreed upon each of your answers, your foreperson must sign this special verdict, and you will all return to open court.

Question No. 3:     In accordance with the damage instructions given by the court, we find the total amount of damages suffered by **[P]laintiff** . . . to be **$4,784**[.]  (Here[,] enter the total amount of damages without any reduction for comparative negligence[.)]

Question No. 4:     Compare the negligence of the following persons and find a percentage for each. The total of the percentages must equal 100%, but the percentage for any one or more of the persons named may be zero if you find that such person was not negligent or that any negligence on the part of such person was not a cause of damage.

| [Plaintiff] | **0%** |
|---|---|
| Carlos Romero | **80%** |
| [Defendant] | **20%** |
| | **100%** TOTAL |

The court will multiply the percentage of [D]efendant times [Plaintiff's] total damages as found by the jury under Question No. 3. The court will then enter judgment for [P]laintiff against [D]efendant in the proportion of damages as to that defendant. If the percentage found by the jury for any one defendant is zero, then the court will enter judgment for that defendant and against [P]laintiff as to that defendant.

**Topic Index for** *Shadoan v. Cities of Gold Casino*, **No. 28,924**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-IA | Interlocutory Appeal |
| AE-RM | Remand |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-JV | Jury Verdict |
| CP-NT | New Trial |
| | |
| **JR** | **JURIES** |
| JR-CM | Communication with Court |
| JR-JT | Juror Testimony |
| | |
| **RE** | **REMEDIES** |
| RE-AR | Additur and Remittitur |
| RE-AD | Apportionment of Damages |