WILSON V. FARMERS INSURANCE CO.

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**CLAUDE WILSON,**
**Plaintiff-Appellee,**
**v.**
**FARMERS INSURANCE COMPANY OF ARIZONA, a foreign corporation,**
**Defendant-Appellant.**

Docket No. A-1-CA-36300
COURT OF APPEALS OF NEW MEXICO
May 23, 2019

APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY, Angie K. Schneider, District Judge

**COUNSEL**

Adam D. Rafkin, P.C., Adam Daniel Rafkin, Ruidoso, NM for Appellee

O'Brien & Padilla, P.C., Daniel J. O'Brien, Tiffany L. Sanchez, Albuquerque, NM for Appellant.

**JUDGES**

LINDA M. VANZI, Judge. I CONCUR: JULIE J. VARGAS, Judge. MEGAN P. DUFFY, Judge, specially concurring.

**AUTHOR:** LINDA M. VANZI

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** Farmers Insurance Company of Arizona (Farmers) appeals the district court's denial of its motion for judgment notwithstanding the verdict, or in the alternative, a new trial. Farmers argues that the jury's punitive damages award was contrary to law because the jury found that Farmers did not act in bad faith in denying Plaintiff Claude Wilson's claim. It also argues that the jury improperly awarded a portion of the compensatory damages to cover Plaintiff's legal fees and costs. Finally, Farmers argues

that the district court erred in granting Plaintiff's motion for attorney fees. Unpersuaded, we affirm.

**Background**

**{2}**      Plaintiff was in an automobile accident involving an underinsured motorist (UIM), which he alleges caused an esophageal hiatal hernia requiring surgical intervention and a head injury that caused cognitive/executive function impairment. Plaintiff settled his claim against the UIM with the UIM's liability insurer for the policy limit of $100,000. Plaintiff then made a demand for $1,400,000 in UIM coverage under his auto policy with Farmers. This demand was equal to the UIM policy limits ($1,500,000) available under the Farmers policy less the $100,000 already paid by the UIM's liability carrier. In support of his demand, Plaintiff claimed $78,678.20 in past medical expenses, $182,575 in future expenses for treatment of cognitive deficits caused by Plaintiff's alleged head injury, and $136,143 in future medication charges. The settlement demand required Farmers to respond within thirty days. At Farmers' request, Plaintiff gave Farmers approximately 1200 pages of pre-accident medical records. Because of the number of records involved, Farmers requested a three-month extension in which to respond to the settlement demand. In spite of the extension, it was not until after Plaintiff filed the present suit four months after the extended deadline that Farmers rejected Plaintiff's demand and offered $66,850 to settle Plaintiff's UIM claim. This offer was in addition to $7,379.66 paid to or on behalf of Plaintiff under his policy.

**{3}**      In his complaint, Plaintiff alleged, generally, that Farmers failed to timely investigate and evaluate his claim or to respond to his settlement offer. Farmers defended against the claims, asserting that Plaintiff's cognitive injuries existed before the accident and were not caused by the accident, that the hiatal hernia was also a preexisting condition that, at most, was aggravated by the accident, and that its $66,850 offer to settle was reasonable. The case ultimately went to trial before a jury. After deliberating, the jury returned a verdict awarding Plaintiff $180,000 in compensatory damages and $150,000 in punitive damages. More detail about the jury's verdict is included in our discussion of Farmers' arguments.

**{4}**      Both parties filed post-trial motions. Farmers filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, arguing that punitive damages were inconsistent with the jury's finding as to bad faith and that the jury erroneously awarded attorney fees as damages. Plaintiff moved for attorney fees and pre-judgment interest. The district court denied Farmers' motion and granted Plaintiff's motion. Farmers appeals the denial of its motion and the grant of Plaintiff's motion.

**Discussion**

**{5}**      On appeal, Farmers makes three arguments. First, it maintains that there was no basis for the jury's award of punitive damages because the jury found that Farmers had not "act[ed] in bad faith by refusing to pay any part of Plaintiff's claim for reasons that were frivolous or unfounded." Therefore, Farmers argues, the punitive damages award

must be set aside as a matter of law. Next, Farmers argues that the jury's award of damages for its handling of Plaintiff's claim was inconsistent with the jury instructions, unsupported by evidence, and contrary to law. Finally, Farmers argues that the district court erred in granting Plaintiff's motion for attorney fees and pre-judgment interest thereon. We address each argument in turn.

**The Jury's Punitive Damages Award Is Not Contrary to Law**

**{6}** Before we address the merits of Defendant's punitive damages argument, we consider Plaintiff's argument that Farmers waived its objection to the jury's punitive damages award because Farmers failed to raise the issue before the jury was discharged. Plaintiff relies on *Thompson Drilling, Inc. v. Romig* for the proposition that "the right to object to an improper verdict is waived when not made at the time of the return of the verdict and cannot be reclaimed and revived by resorting to a motion for a new trial or on appeal." 1987-NMSC-039, ¶ 11, 105 N.M. 701, 736 P.2d 979. In that case, our Supreme Court declined to address the appellant's argument that the appellant "was prejudiced by the district court's failure to submit complete jury verdict forms" because the appellant had not objected to the verdict forms or when the verdict was returned. *Id.* ¶ 10. In another case cited by Plaintiff, the appellant argued that statutory damages must be reversed where the jury had found that the appellant acted "willfully" as to one claim, but not as to other claims, where the claims were based on the same conduct. *See G & G Servs., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, ¶ 40, 128 N.M. 434, 993 P.2d 751. We declined to address the issue, stating that a "litigant who fails to object to an alleged inconsistency in a jury's verdict before the jury is dismissed may be held to have waived any further challenge to the alleged inconsistency." *Id.* ¶¶ 41-42.

**{7}** We agree with Farmers that *Thompson Drilling* and *G & G Services* are inapposite because they involved incorrect or ambiguous instructions. In contrast, Farmers argues that its arguments raise a pure issue of law. Farmers points to *McLelland v. United Wisconsin Life Insurance Co.*, in which this Court held that a defendant's failure to object to a verdict did not preclude review where the verdict form permitted the jury to award punitive damages in spite of its finding that the defendant had not acted in bad faith. 1999-NMCA-055, ¶¶ 25, 29, 127 N.M. 303, 980 P.2d 86 ("In the absence of a finding of bad faith, the jury could not award punitive damages."). The Court stated that "the issue is whether the verdict is supportable by law" and that "the punitive damages award was not supportable, because the jury could award punitive damages only if it found a bad faith breach of contract by [the appellant]." *Id.* ¶ 31 (internal quotation marks and citation omitted). It then set aside the jury's punitive damages award. *Id.* ¶ 32.

**{8}**     Applying *McLelland*,[1] we conclude that Farmers' failure to raise the issue before dismissal of the jury does not preclude our review of whether the punitive damages award here was contrary to law.

**{9}**     We now turn to Farmers' substantive challenge to the punitive damage award. Farmers contends that the only theory of liability upon which punitive damages could have been based was Plaintiff's bad faith claim and, because the jury found that it had not acted in bad faith in response to question seven of the special verdict, the punitive damages award must be set aside as a matter of law. Farmers' argument rests on the jury's responses to questions on the special verdict form, which we set out in full:

> Question No. 1: Did [Plaintiff] suffer a hiatal hernia as a result of the November 6, 2009 accident?
>
> Answer: <u>No</u> (Yes or No)
>
> Please proceed to Question No. 2
>
> Question No. 2: Did [Plaintiff] suffer an aggravation of a pre-existing hiatal hernia as a result of the November 6, 2009 accident?
>
> Answer: <u>Yes</u> (Yes or No)
>
> Please proceed to Question No. 3.
>
> Question No. 3: Did [Plaintiff] suffer a traumatic brain injury, resulting in . . . cognitive, behavioral and emotional deficits as a result of the November 6, 2009 accident?
>
> Answer: <u>No</u> (Yes or No)
>
> Please proceed to Question No. 4.
>
> Question No. 4: Did [Plaintiff] suffer an aggravation of pre-existing cognitive, behavioral and emotional deficits as a result of this accident?
>
> Answer: <u>No</u> (Yes or No)
>
> If the answer is "yes" to any of the above, you are to answer question No. 5.

---

1 We disagree with the special concurrence that *Estate of Saenz v. Ranack Constructors, Inc.*, requires us to find that Farmers waived its argument on appeal. *Saenz* is distinguishable because the Saenz holding depends on the fact that "the verdict was susceptible to more than one interpretation." 2018-NMSC-032, ¶ 31, 420 P.3d 576. Nothing in *Saenz* suggests that a failure to timely object constitutes a waiver of a *substantive* objection to an unambiguous verdict like that asserted by Farmers.

If the answers are "no" to all of the above, you are not to answer further questions. Your foreperson must sign this special verdict which will be your verdict, and you will all return to open court.

Question No. 5: In accordance with the damage instructions given by the Court, we find the total amount of compensatory damages suffered by [Plaintiff] to be $80,000 (Here enter total amount of damages for the injuries and/or aggravation of pre-existing injuries to [Plaintiff], without any inclusion of punitive or other damages)

Question No. 6: Did [Plaintiff], with intent to deceive Farmers . . ., deal dishonestly with Farmers . . . about a material fact?

Answer: No (Yes or No)

If the answer to Question No. 6 is "Yes", you are not to answer further questions. Your foreperson must sign this special verdict which will be your verdict, and you will all return to open court.

If the answer to Question No. 6 is "No", you are to proceed to Question No. 7.

Question No. 7: Did Farmers . . . act in bad faith by refusing to pay any part of [Plaintiff]'s claim for reasons which were frivolous or unfounded?

Answer: No (Yes or No)

Question No. 8: Did Farmers . . . fail to act reasonably under the circumstances to conduct a timely and fair investigation of [Plaintiff]'s underinsured motorist claim?

Answer: Yes (Yes or No)

If the answer to Questions Nos. 7 and No. 8 are "No," you are not to answer further questions. Your foreperson must sign this special verdict which will be your verdict, and you will all return to open cour[t].

If you answered "yes" to either Question No. 7 or Question No. 8, you are to answer Question No. 9.

Question No. 9: Was Farmers' handling of Plaintiff's claim a proximate cause of any of damages to [Plaintiff]?

Answer: Yes (Yes or No)

If the answer to Question No. 9 is '"No," you are not to answer further questions. Your foreperson must sign this special verdict which will be your verdict, and you will all return to open court.

If the answer to Question No. 9 is "Yes," you are to answer Question No. 10.

Question No. 10: In accordance with the damage instructions given by the court, we find the total amount of actual damages to be awarded against Defendant to be $100,000 (Here only enter the total amount of actual damages suffered by [Plaintiff] as a result of Farmers' handling of Plaintiffs claim.[)]

Question No. 11: In accordance with the exemplary or punitive damages instructions given by the court, we find the total amount of punitive damages to be awarded against Defendant to be $150,000 (Here enter the total amount of punitive damages only).

On appeal, we consider the jury instructions as a whole and, absent evidence to the contrary, we assume the jury followed the instructions given. *See Am. Nat'l Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 17, 293 P.3d 954; *Nw. Bank N.M., N.A. v. Chrysler Corp.*, 1999-NMCA-070, ¶ 40, 127 N.M. 397, 981 P.2d 1215 (assuming that the jury followed the court's instructions). Whether Farmers was entitled to judgment as a matter of law is a legal question we review de novo. *Krieger v. Wilson Corp.*, 2006-NMCA-034, ¶ 30, 139 N.M. 274, 131 P.3d 661.

**{10}** We disagree with Farmers' reading of the jury instructions and verdict. The jury was instructed that, to prove insurance bad faith, Plaintiff bore the burden to prove "at least one of the following contentions:"

[1]. Farmers . . . refused to pay a claim of the policyholder for reasons which were frivolous or unfounded.

[2]. Farmers . . . failed to act reasonably under the circumstances to conduct a timely and fair investigation of the claim.

[3]. Farmers failed to give equal consideration to the interests of [Plaintiff].

**{11}** In addition, Instruction Twelve stated the definition of insurance bad faith from UJI 13-1702:

An insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded. An insurance company does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy.

In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair investigation and evaluating of the claim.

Instruction Thirteen provided that

[u]nder the "bad faith" claim, what is customarily done by those engaged in the insurance industry is evidence of whether the insurance company acted in good faith. However, *the good faith of the insurance company is determined by the reasonableness of its conduct, whether such conduct is customary in the industry or not.* Industry customs and standards are evidence of good or bad faith, but they are not conclusive.

UJI 13-1705 NMRA (emphasis added). These instructions indicate that the failure to act reasonably in investigating and evaluating a claim may be an aspect of bad faith.

**{12}**   In *American National Property & Casualty Company*, we acknowledged that an insurer's failure to investigate a claim is a sufficient basis for a bad faith claim. 2013-NMCA-013, ¶¶ 10-13. The jury there received instructions identical to Instruction Nos. 12 and 13 given here. *See id.* ¶ 15. We noted that, "[t]o be liable for bad faith, the insurer must lack a founded belief, and the founded belief is absent when the insurer fails to undertake an investigation adequate to determine whether its position is tenable." *Id.* ¶ 13; *see Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 2, 135 N.M. 106, 85 P.3d 230 (observing that "failure-to-pay cases" include "those arising from a breach of the insurer's duty to timely investigate, evaluate, or pay an insured's claim in good faith"). After reviewing the jury instructions, we held that, although the special verdict form did not ask the jury about the reasonableness of the appellant's investigation, the jury instructions "could have been read by the jury to mean that acting unreasonably under the circumstances when investigating and evaluating a claim could also result in a denial of the claim for reasons that are frivolous or unfounded." *Am. Nat'l Prop.*, 2013-NMCA-013, ¶ 17.

**{13}**   In the present case, the jury instructions stated that a failure to act reasonably in investigating Plaintiff's claim was a basis for bad faith and the special verdict form specifically directed the jury to determine in response to question eight whether Farmers had "fail[ed] to act reasonably under the circumstances to conduct a timely and fair investigation of [Plaintiff]'s underinsured motorist claim." The jury answered this question affirmatively. Hence, the jury found that Farmers acted in bad faith.

**{14}**   Farmers argues that the finding that it acted unreasonably "is legally insufficient to support an award for punitive damages." *See Sloan*, 2004-NMSC-004, ¶ 17 (stating that merely unreasonable conduct does not warrant punitive damages "[b]ecause punitive damages are imposed for the limited purposes of punishment and deterrence" and that "a culpable mental state is a prerequisite to punitive damages"). However, this argument fails to consider the jury instructions as a whole. Instruction No. 20 required

the jury to find both bad faith and a culpable state of mind in order to award punitive damages. Consistent with UJI 13-1718 NMRA, it provided:

> If you find that Plaintiff should recover compensatory damages for the bad faith actions of the insurance company, and you find that the conduct of the insurance company was in reckless disregard for the interests of the Plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful or wanton, then you may award punitive damages.

*See* UJI 13-1718 Directions for Use ("This instruction must ordinarily be given in every action under UJI 13-1702."). In *Sloan*, our Supreme Court noted that this instruction "ensure[d]" that the "jury has found a culpable mental state before awarding punitive damages[.]" 2004-NMSC-004, ¶ 2; *see id.* ¶ 16 (observing that "there comes a point at which the insurer's conduct progresses from mere unreasonableness to a culpable mental state").

**{15}** In sum, the jury's answer to question seven of the special verdict form was not dispositive of Plaintiff's bad faith claim. The jury was instructed that a bad faith claim could be predicated on either a refusal to pay a claim "for reasons which were frivolous or unfounded" or a failure "to act reasonably . . . to conduct a timely and fair investigation of the claim." In answer to question eight, the jury found that Plaintiff had proven the latter type of bad faith. In addition, the jury was instructed that it may award punitive damages only if it also found a culpable state of mind. Assuming, as we must, that the jury followed the instructions, we see no error in its award of punitive damages. We therefore affirm the district court's denial of Farmers' motion for judgment notwithstanding the verdict on this ground.

**A Juror's Post-Verdict Statements Do Not Provide a Basis for Amending the Verdict**

**{16}** Farmers argues next that "[t]he jury's award of 'actual damages' to compensate Plaintiff for attorney fees and costs arising from the bad faith . . . claim is contrary to law and the jury instructions in this case." Farmers' argument rests on statements by the jury foreperson following return of the verdict. After the jury retired to the jury room, Plaintiff's counsel stated that he was confused about the total value of the judgment and asked that the jury clarify whether they "meant the . . . [$80,000 awarded in question five] to be on top of the [$100,000 awarded in question ten], or whether the [$100,000] subsumes the [$80,000]." The following exchange between the district court and the jury foreperson occurred:

> THE COURT: We had a question come up about an interpretation of your verdict. And so I'm looking at you, Mr. Stone, because you're the foreperson. So hopefully, you can help us. In No. 5, you have awarded the 80,000 for the compensatory damages, and then in No. 10, you say that the total amount of actual damages to be awarded to the defendant is 100,000. So is that—does the 100,000—

MR. STONE [Foreperson]: [Inaudible] separate amounts, your honor. We were looking at $80,000 to cover the medical expenses.
THE COURT: Okay.
MR. STONE: And $100,000 to cover damages, which includes [inaudible] costs and [inaudible].
THE COURT: Okay. We just needed to have that clarified. I won't go through everyone's names again, but everybody indicate to me if that's what you intended. Does anybody believe that that is not what they intended? No one is indicating that they do.

Farmers acknowledges that the record of the jury foreperson's statement is partially inaudible, but asserts that the jury foreperson said the damages awarded in response to question ten were to "defray legal fees, costs, etc." Based on that assertion, Farmers argues that damages to defray legal fees and costs are improper because they are (1) inconsistent with the jury instructions, (2) not based on the evidence, or (3) not permissible under NMSA 1978, § 39-2-1 (1977).

**{17}** Even if the jury foreperson said that the "actual damages" were intended to cover attorney fees and costs, it is settled law that "post-verdict jury statements c[an]not be used by the . . . court[s] to amend the verdict and adjust the plaintiff's award." *Shadoan v. Cities of Gold Casino*, 2010-NMCA-002, ¶ 12, 147 N.M. 444, 224 P.3d 671. Rule 11-606(B) NMRA reflects this common-law rule. It provides,

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

The rule specifies only three situations in which a court may consider a juror's statement, which are where: "(a) extraneous prejudicial information was improperly brought to the jury's attention; (b) an outside influence was improperly brought to bear on any juror; or (c) a mistake was made in entering the verdict on the verdict form." Rule 11-606(B)(2). We review the district court's "interpretation of the rule behind [its] ruling . . . de novo." *Shadoan*, 2010-NMCA-002, ¶ 6.

**{18}** *Shadoan* provides an example of the rule's operation. In that case, the district court granted a new trial based on post-verdict affidavits by several jurors indicating that the jury had intended to award a different amount than was reflected on the verdict form. *Id.* ¶¶ 4-5, 17. This Court reversed, stating that the error "[was] not 'clerical' " but instead went "to the substance of what the jury was asked to decide, necessarily implicating the jury's mental processes . . . [and] the jury's understanding of the court's instructions and application of [them] to the facts of the case." *Id.* ¶ 11 (internal quotation marks and citation omitted). It concluded that Rule 11-606(B) precluded

consideration of the affidavits and that, without that evidence, there was no basis for granting a new trial. *Shadoan*, 2010-NMCA-002, ¶ 15.

**{19}** Here, the jury foreperson stated that the amounts in response to questions five and ten were separate, and then volunteered the jury's reasoning behind the amounts. His latter statements go to the jury's "mental processes" and intent. Hence, they do not provide a basis for amending the verdict. To the extent Farmers suggests that Plaintiff invited error by eliciting the jury foreperson's statement, we disagree. Plaintiff requested clarification of the aggregate amount of compensatory damages and neither Plaintiff nor the district court sought to determine the jury's rationale behind the amounts the jury awarded in questions five and ten. Rule 11-606(B). We conclude that the district court did not err in denying Farmers' motion for judgment notwithstanding the verdict on this ground.

**{20}** Farmers next argues that the district court's attorney fee award must be reversed because 1) it afforded Plaintiff a double recovery, 2) was contrary to Section 39-2-1, and 3) was not supported by the jury's verdict as required by NMSA 1978, Section 59A-16-30 (1990) (stating that attorney fees may be proper where the insurer "has willfully engaged in" unfair claims practices). We review a district court's attorney fee award for an abuse of discretion. *Am. Civil Liberties Union of N.M. v. Duran*, 2016-NMCA-063, ¶ 24, 392 P.3d 181.

**{21}** First, Farmers maintains that the district court's attorney fee award "duplicates" the jury's attorney fee award. As already discussed, however, we decline to consider the jury foreperson's statements as to the rationale behind the jury's damages awards. There is, therefore, no basis for concluding that the jury's damages duplicated the district court's attorney fee award. Farmers argues next that the attorney fee award was contrary to both Section 59A-16-30 and Section 39-2-1. Because we conclude that the district court did not abuse its discretion by awarding attorney fees under Section 39-2-1, we need not address whether fees are also proper under Section 59A-16-30.

**{22}** Pursuant to Section 39-2-1, a district court may award to a prevailing insured "reasonable attorney[] fees and costs of the action upon a finding by the [district] court that the insurer acted unreasonably in failing to pay the [insured's] claim." The district court found that

4. The jury in this action assessed punitive damages against [Farmers].
5. The jury determined the actions of [Farmers] to be reckless, wanton, dishonest or malicious.
6. Pursuant to . . . [Section] 39-2-1, having prevailed in a first party claim against his insurer, Plaintiff is able to recover attorney fees.

Farmers argues that these findings are unsupported because "the jury found that Farmers was not unreasonable in failing to pay Plaintiff's claim" when it answered "no" to question seven of the special verdict form. As we have concluded already, this argument ignores the remainder of the jury instructions and the jury's answer to

question eight of the special verdict form, as well as the jury's award of punitive damages. Moreover, Farmers does not assert that the evidence was insufficient to support the jury's finding as to question eight or the punitive damages award. Consequently, we discern no abuse of discretion in the district court's attorney fee award under Section 39-2-1.

**Conclusion**

**{23}** We affirm the district court's denial of Farmers' motion for a judgment notwithstanding the verdict and its attorney fee order as well.

**{24} IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**I CONCUR:**

**JULIE J. VARGAS, Judge**

**DUFFY, J., specially concurring.**

**DUFFY, J., specially concurring.**

**{25}** I agree with the majority that the jury's verdict should be affirmed, but I would have affirmed on the basis that Farmers waived its review of the verdict. Respectfully, I disagree with the majority that *McLelland* can or should be applied in this case to allow appellate review of this unpreserved issue. 1999-NMCA-055. *McLelland* was an unusual case in which the jury awarded punitive damages for an Unfair Practices Act (UPA) violation—a category of damages not authorized by the statute. *Id.* ¶ 1. We recognized that the waiver rule would not preclude our review of the verdict because the verdict was plainly contrary to the law. *Id.* ¶ 31. This case is not analogous—the jury found that Farmers acted in bad faith, and it is well settled that punitive damages may be awarded in insurance bad faith cases. *See, e.g.*, *Sloan*, 2004-NMSC-004, ¶ 2. I write separately out of concern that applying *McLelland* to reach the merits of Farmers' appeal opens the door to unintended consequences by signaling to litigants that they may obtain appellate review of an otherwise unpreserved jury issue simply by characterizing it as "contrary to law."

**{26}** Before discussing *McLelland*, I briefly review our law regarding preservation and waiver of challenges to jury instructions, verdict forms, and verdicts on appeal. For challenges involving the instruction given, or, as here, the verdict form, Rule 1-051 NMRA and cases applying it require that an objection be made to the instruction or verdict form before the jury retires in order to preserve the error. In a long line of cases, our courts have enforced this preservation rule in circumstances where a party (1) fails

to assert an objection altogether,[2] (2) asserts an objection that is not sufficiently specific,[3] or (3) participates in submitting an incorrect instruction.[4] Similarly, a failure to

2 *See, e.g., Sonntag v. Shaw*, 2001-NMSC-015, ¶ 17, 130 N.M. 238, 22 P.3d 1188 ("If a party wishes to preserve for appellate review the trial court's decision to provide the jury with one instruction rather than another, that party must draw the court's attention to a specific flaw in the given instruction."); *Lietzman v. Ruidoso State Bank*, 1992-NMSC-021, ¶ 2, 113 N.M. 480, 827 P.2d 1294 ("There was no objection to any jury instruction at the trial. We therefore cannot review the correctness of the instructions, which became the law of the case."); *City of Albuquerque v. Ackerman*, 1971-NMSC-032, ¶ 17, 82 N.M. 360, 482 P.2d 63 ("We hold, in accordance with long settled practice in New Mexico, that error in failure to give incidental instructions, even from UJI, and even though mandatory, must be brought to the attention of the court in timely fashion if it is to be preserved as error[.]"); *Lovato v. Hicks*, 1965-NMSC-004, ¶ 11, 74 N.M. 733, 398 P.2d 59 ("It follows that the form of the [special] interrogatory cannot be reviewed for an error claimed for the first time on appeal."); *Diversey Corp. v. Chem-Source Corp*., 1998-NMCA-112, ¶¶ 13-14, 125 N.M. 748, 965 P.2d 332 (holding that the plaintiff failed to preserve errors for appellate review because it failed to alert the court to ambiguities in jury instructions, and stipulated to "and/or" language in the verdict form); *Gutierrez v. Albertsons, Inc*., 1991-NMCA-135, ¶ 17 n.1, 113 N.M. 256, 824 P.2d 1058 ("There was no objection to the instruction given to the jury. Therefore, those instructions became the law of the case."); *Lewis v. Rodriguez*, 1988-NMCA-062, ¶ 20, 107 N.M. 430, 759 P.2d 1012 (holding that error was not preserved where the party failed to alert the court to error in a given instruction that was constructed from both parties' tendered instructions); *Harrison v. ICX, Ill.-Cal. Exp., Inc*., 1982-NMCA-089, ¶¶ 18-19 N.M. 247, 647 P.2d 880 ("The plaintiffs concurred in instruction No. 37 and on the submission of the Special Interrogatories to the jury. They did not object before the instructions were read to the jury and before the jury retired to deliberate. The law in New Mexico is very clear as to the rights and duties of litigants in a jury case. Objections must be made to instructions prior to the retirement of the jury. . . . If [the jury instructions] were not proper, [the] plaintiffs participated in the submission of these matters to the jury, and they cannot now seek to have the verdict set aside by way of a motion for a new trial or on appeal."), *abrogated on other grounds by Martinez v. Friede*, 2004-NMSC-006, 135 N.M. 171, 86 P.3d 596; *Bendorf v. Volkswagenwerk Aktiengeselischaft*, 1977-NMCA-038, ¶ 8, 90 N.M. 414, 564 P.2d 619 ("The proximate cause instruction was not only unobjected to by the plaintiff but it had been requested by the plaintiff. It thus became the law of the case. The [p]laintiff cannot now complain of the contributory negligence aspect of this case when he requested the erroneous instruction which was given to the jury." (citations omitted)); *Curtiss v. Aetna Life Ins. Co*., 1976-NMCA-057, ¶¶ 17-18, 90 N.M. 105, 560 P.2d 169 (holding that jury instruction on punitive damages that contained an incorrect statement was controlling because the defendant did not object to it).
3 *See, e.g., Scott v. Brown*, 1966-NMSC-135, ¶ 33, 76 N.M. 501, 416 P.2d 516 ("Objections which fail to point out specifically the vice or defect in an instruction, so as to clearly inform the trial court of the claimed error, are insufficient to preserve the error for review."); *Lovato v. Hicks*, 1965-NMSC-004, ¶ 9, 74 N.M. 733, 398 P.2d 59 ("We think the objection was not sufficient to alert the mind of the trial judge to the specific vice claimed in the interrogatory. An appellate court will not reverse on some ground not particularized at the trial."); *Allen v. Tong*, 2003-NMCA-056, ¶ 33, 133 N.M. 594, 66 P.3d 963 ("The [p]laintiff objected to neither the wording, nor the structure of the given instruction, and never suggested better or different wording or structure. [The plaintiff] thereby failed to preserve error for review."); *Echols v. N.C. Ribble Co*., 1973-NMCA-038, ¶ 43, 85 N.M. 240, 511 P.2d 566 ("Objections must be explicit. Objections in general terms are not sufficient. The trial court must be advised of the specific error so [it] may have an opportunity to correct it."); *Morris v. Dodge Country, Inc*., 1973-NMCA-100, ¶ 10, 85 N.M. 491, 513 P.2d 1273 ("[T]he objection must specifically point out the claimed defect. The objection, 'wrong rule,' is similar to an objection that an instruction is an incorrect statement of the law. Such an objection is insufficient, not being specific." (internal citations omitted)); *McBee v. Atchison, Topeka & Santa Fe Ry. Co*., 1969-NMCA-063, ¶¶ 19-20, 80 N.M. 468, 457 P.2d 987 (holding that objection was insufficient to alert the trial judge to the claimed error and afford an opportunity for correction and therefore, insufficient to preserve the claimed error for review).
4 *See, e.g., Scott*, 1966-NMSC-135, ¶¶ 28-29 ("If [the] plaintiffs felt they were being prejudiced by the conduct of the court in submitting these forms of verdicts to the jury, it was their duty to call such to the attention of the trial court so that the court might have corrected or avoided the claimed error. Parties cannot participate in the

object after the jury returns its verdict but prior to its dismissal results in waiver of the objection and appellate review thereof. *Saenz*, 2018-NMSC-032, ¶ 23 ("As a general rule, the right to object to an improper verdict is waived when not made at the time of the return of the verdict and cannot be reclaimed and revived by resorting to a motion for a new trial or on appeal." (internal quotation marks and citation omitted)). "Our appellate courts have applied this waiver rule in situations where . . . the complaining party had an opportunity to challenge the verdict prior to the jury's discharge but failed to do so." *Id.*; *see also Thompson Drilling*, 1987-NMSC-039, ¶¶ 11-12 ("[T]he right to object to an improper verdict is waived when not made at the time of the return of the verdict and cannot be reclaimed and revived by resorting to a motion for a new trial or on appeal."); *Guest v. Allstate Ins. Co.*, 2009-NMCA-037, ¶ 36, 145 N.M. 797, 205 P.3d 844 ("[A]fter having the verdict read aloud by the judge and the jury polled at Allstate's request, Allstate waived its right to challenge the inconsistency in the verdict by failing to bring the matter to the trial court's attention before the jury was discharged."), *aff'd in part, rev'd in part on other grounds by*, 2010-NMSC-047, 149 N.M. 74, 244 P.3d 342; *O'Neel*, 2002-NMCA-028, ¶¶ 5-6 (holding that USAA waived review of allegedly inconsistent jury verdict because it failed to alert the district court to the alleged inconsistency before the jury was discharged, the court read the special verdict in its entirety, polled the jurors, and after instructing counsel on the preparation of the judgment, asked counsel if there was anything else, "to which counsel for USAA answered in the negative"); *G & G Servs.*, 2000-NMCA-003, ¶¶ 41-42 ("A litigant who fails to object to an alleged inconsistency in a jury's verdict before the jury is dismissed may be held to have waived any further challenge to the alleged inconsistency."); *Ramos v. Rodriguez*, 1994-NMCA-110, ¶ 13, 118 N.M. 534, 882 P.2d 1047 (holding that the defendant waived his opportunity to challenge a facially inconsistent verdict where he failed to raise the issue before the jury's discharge and rejecting the defendant's argument that he did not have an opportunity to object when the verdict had been read aloud and the jury had been polled). *But see Helena Chem. Co. v. Uribe*, 2013-NMCA-017, ¶¶ 26-29, 293 P.3d 888 (declining to apply the waiver rule to the party's claim that the verdict was inconsistent because the district court had not read aloud the jury's answers to special interrogatories before the jury was discharged, such that the parties did not have notice and an opportunity to object to the inconstancies in the verdict); Rule 12-321(A) NMRA ("If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party.").

**{27}** We have declined to apply the rule only in rare circumstances where the verdict was plainly contrary to law, such as where the jury did not find causation and thus its findings did not support its damages award, *Turpie v. Southwest Cardiology Assoc., P.A.*, 1998-NMCA-042, 124 N.M. 787, 955 P.2d 716, and where the jury awarded

---

submission of an improper verdict or other improper matters and then have the verdict set aside because it may turn out to be unfavorable."); *Pub. Serv. Co. of N.M. v. Diamond D Const. Co.*, 2001-NMCA-082, ¶ 25, 131 N.M. 100, 33 P.3d 651 ("Insofar as PNM is arguing that the jury instructions were legally incorrect or confusing, it is precluded from making this argument by its interjection of the error."); *Diversey*, 1998-NMCA-112, ¶¶ 37-38 (holding that the plaintiff's failure to object to the inclusion of "and/or" language in the verdict form amounted to a failure to preserve the error for review).

punitive damages on a statutory cause of action that did not allow for them, as in *McLelland*, 1999-NMCA-055. A brief comparison of these cases to the present matter demonstrates why *McLelland* is inapplicable here.

**{28}** In *Turpie*, a wrongful death case, we declined to apply the waiver rule because the jury's verdict was "unsupportable by law." 1998-NMCA-042, ¶¶ 15-16 (reviewing the jury's special verdict findings that the defendant doctors had committed malpractice, that the malpractice was *not* a proximate cause of an injury and damages to the estate, but that the malpractice *was* a proximate case of an injury or damages to the plaintiff). The jury awarded damages to the plaintiff for her loss of consortium claim even though it had not found causation for her husband's death. *Id.* ¶¶ 1-2. On appeal, the plaintiff argued that we should apply the waiver rule and uphold the damages award because defendants had participated in submitting an improper verdict form that allowed the jury to award damages for plaintiff's loss of consortium claim even if it found that the defendants' negligence did not cause her husband's death. *Id.* ¶¶ 15-16 (quoting *Harrison*, 1982-NMCA-089, ¶ 98, for the proposition that " 'a litigant in a jury trial may not participate in the submission of an improper verdict . . . and then seek to have the verdict set aside because it may turn out to be unfavorable' "). We disagreed, saying that in order for the waiver rule articulated in *Harrison* to benefit the plaintiff, "there must be error in the instruction, and that error must lead to a verdict that is otherwise supportable by law." *Id.* ¶ 15. We determined that the verdict was not supportable by law because, "[b]y definition, if the defendant did not cause the injured spouse's damages, from which flow all the damages for loss of consortium, defendant's actions cannot be the proximate cause of the loss of consortium damages either. Where the jury specifically finds that the defendant's negligence was not the proximate cause of the injured spouse's damages, a loss of consortium claim cannot survive." *Id.* ¶ 9. Following *Ramos*, we concluded that the jury's negative answer regarding proximate causation for the death controlled all other aspects of the verdict and that the remaining responses concerning the plaintiff's damages were mere surplusage. *Id.* ¶ 17.

**{29}** In *McLelland*, the plaintiff filed claims for common-law insurance bad faith and violation of the UPA after the defendant declined to provide medical insurance coverage for an emergency caesarian section. 1999-NMCA-055, ¶ 3. Punitive damages could only be awarded for the plaintiff's common law bad faith claim, and could not be awarded based on the UPA claim. *Id.* ¶¶ 10-14; *see also Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶¶ 21-22, 110 N.M. 314, 795 P.2d 1006 (holding that if the plaintiffs were awarded both treble damages under the UPA and punitive damages for common law fraud, they must make an election between them). Yet, the special verdict form, drafted by the district court and approved by both counsel, nevertheless directed the jury to answer a question on punitive damages if it found the defendant liable under either theory. *McLelland*, 1999-NMCA-055, ¶¶ 5-7. The jury found the defendant liable for violation of the UPA but did not find that the defendant had breached its insurance contract in bad faith; it awarded compensatory damages in the amount of $9,169.84 and punitive damages in the amount of $250,000. *Id.* ¶ 7. On appeal, as in *Turpie*, we declined to enforce the waiver rule even though the defendant had not objected to the special verdict form before it was submitted to the jury because the punitive damages

award was not "supportable by law." *Id.* ¶ 31. Applying *Turpie*, we stated that "the jury could award punitive damages only if it found a bad faith breach of contract by [the defendant]," and consequently, the jury's answer stating that the defendant "had not committed a breach of contract in bad faith[] controlled the disposition of the case with respect to punitive damages." *Id.* ¶¶ 29, 31.

**{30}** In contrast to *Turpie* and *McLelland*, our Supreme Court recently enforced the waiver rule once again in *Saenz*, 2018-NMSC-032. In *Saenz*, a wrongful death case, the jury returned a verdict that awarded compensatory and punitive damages to the four individual plaintiffs, but no damages to the wrongful death estate. *Id.* ¶ 13. Plaintiffs appealed, arguing that the jury's award of zero dollars to the wrongful death estate was not supported by substantial evidence. *Id.* ¶¶ 13-14. The Court, applying *Thompson Drilling*, *Diversey*, and *Ramos*, held that the plaintiffs had "waived their claim of error by contributing to ambiguity in the verdict and by failing to object to or seek clarification of the jury's intent prior to its discharge." *Id.* ¶ 32. The Court faulted the plaintiffs for creating the ambiguity by modifying the UJI for wrongful death, submitting a special verdict form that was confusing to the jury regarding the allocation of damages, and in failing to suggest a response that would assist the jury in allocating damages when the jury asked a question during deliberations. *See id.* ¶¶ 24-29. In addition, the Court observed that the plaintiffs had an opportunity to object to the verdict before the jury was discharged when the district court read the verdict aloud and polled the jury at the plaintiffs' request, but failed to do so. *Id.* ¶ 30.

**{31}** Turning now to this case, Farmers does not assert that it objected to the special verdict form before it was submitted to the jury. The special verdict form allowed the jury to answer Question No. 11 regarding the amount of its punitive damages award without conditioning the jury's ability to answer that question on whether it had responded affirmatively to any of the previous questions on the verdict form. The form did not state, for example, that if the jury had answered "no" to Question No. 7, which asked whether Farmers had acted in bad faith by refusing to pay any part of Plaintiff's claim for reasons which were frivolous or unfounded, that it was not to answer any further questions or Question No. 11. Farmers, like the defendants in *Saenz*, also failed to object to the verdict before the jury was discharged, even though the district judge read the verdict aloud and the jury was polled at Plaintiff's request in order to answer questions about the compensatory damages award. *See Ramos*, 1994-NMCA-110, ¶ 13 ("Since the trial court agreed to poll the jury at the [plaintiff's] request, the [plaintiff] fails to satisfactorily explain why he did not also have the opportunity to ask the court to retire and reconsider the alleged inconsistency at the same time."). Because Farmers participated in submitting the special verdict form, which contributed to the alleged error Farmers now claims on appeal, and failed to object to or seek clarification of the verdict before the jury was discharged, Farmers waived its claim of error. *See Sanez*, 2018-NMSC-032, ¶ 32.

**{32}** Farmers attempts to avoid the waiver rule by framing its argument in terms of *McLelland*, arguing that the punitive damages award is unsupportable by law and that the jury's answer to Question No. 11 should be deemed "mere surplusage," but a review

of Farmers' brief, the jury instructions, and the special verdict form demonstrate that there is no surplusage and no error of law. Unlike *McLelland*, where we reversed the jury's punitive damages award because it had not found the defendant liable for the plaintiff's common law bad faith claim, the jury in this case found Farmers liable on Plaintiff's bad faith claim. 1999-NMCA-055. In particular, Plaintiff listed three separate acts and omissions its 13-302B instruction (Instruction No. 2 as presented to the jury in this case), each of which would establish a breach of duty sufficient to find Farmers liable for insurance bad faith. *See* UJI 13-302B NMRA; *Allen v. Tong*, 2003-NMCA-056, ¶¶ 14-16, 133 N.M. 594, 66 P.3d 963 (discussing UJI 13-302B and stating, "The UJI 13-302B Directions for Use state that 'each numbered contention must contain a statement of facts which, *standing alone, establishes a breach of duty.*' " (internal quotation marks and citation omitted)). In Question No. 8 on the special verdict form, the jury found Farmers liable under Plaintiff's second 13-302B theory, which stated that Farmers "failed to act reasonably under the circumstances to conduct a timely and fair investigation of the claim." *See O'Neel*, 2002-NMCA-028, ¶ 9 (discussing and finding substantial evidence to support the jury's finding that USAA had acted in bad faith by not acting reasonably under the circumstances to conduct a fair investigation of the plaintiff's claim); *see also Jessen v. Nat'l Excess Ins. Co.*, 1989-NMSC-040, ¶ 8, 108 N.M. 625, 776 P.2d 1244 (holding that an insurer may not simply refuse to investigate the claim of the insured using a failure to verify the claim as a justification for denial of coverage). The special verdict form instructed the jury that if it answered "yes" to Question No. 8, that it needed to answer Question No. 9, which asked whether Farmers' claims handling proximately caused Plaintiff's damages, to which the jury also answered "yes." The special verdict form next instructed the jury, if it answered yes to Question No. 9, to answer Question No. 10 regarding the amount of actual damages to be awarded against Farmers. Farmers concedes that the "jury's finding that Farmers failed to act reasonably under the circumstances may be legally sufficient for a jury to award compensatory damages" for Plaintiff's bad faith claim. And as our Supreme Court stated in *Jessen*, "if it is conceded that substantial evidence supported instructions on compensatory damages for bad faith, then it supported instructions on punitive damages for bad faith." 1989-NMSC-040, ¶ 8; *see* UJI 13-1718 NMRA (stating in its directions for use that the punitive damages instruction for bad faith ordinarily must be given in every action under UJI 13-1702 (bad faith failure to pay first party claim as alleged in this lawsuit as Instruction No. 12)). The jury's findings on liability and causation support its award of actual damages (i.e., there is no surplusage in this verdict), and the jury found Farmers liable on a cause of action that allows the jury to award punitive damages; consequently, there is no basis to apply *McLelland* here.

**{33}**     To the extent that Farmers argues that the punitive damages award is not supported by the requisite findings because the jury answered "no" to Question No. 7 regarding bad faith, the majority correctly addresses this matter and I point out only that Farmers' argument appears to be nothing more than a veiled sufficiency of the evidence challenge rather than a true challenge to the legality of the verdict. For the foregoing reasons, I believe *Saenz* is controlling and that Farmers waived its claim of error on appeal.

**MEGAN P. DUFFY, Judge**